884 F.2d 713
 Joyce C. BELL, Appellant,
v.
UNITED PRINCETON PROPERTIES, INC., United Princeton
Properties, Inc., Pension Plan, Retirement Plan of United
Princeton Properties, Inc., Robert B. Medina, Thomas D.
Stanley, G. Frederick Dunn, Stephen L. Tully, John Doe
Investment Manager, James F. Farrell, Appellees.
 No. 88-5629.
 United States Court of Appeals,
Third Circuit.
 Argued March 10, 1989.
Decided Sept. 5, 1989.
 
 Fredric J. Gross (argued), Mount Ephraim, N.J., for appellant.
 Earl M. Bennett (argued), Richard M. Conley, Herold and Haines, P.A., Liberty Corner, N.J., for appellees.
 Before SLOVITER and BECKER, Circuit Judges, and POLLAK, District Judge*.OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This appeal concerns a counsel fee dispute. The underlying case involved claims that defendants had violated several provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Secs. 1001-1461 (1982), with respect to two pension plans in which the plaintiff was a participant. The case settled, and the stipulation of settlement authorized the district court to award a reasonable attorneys' fee to plaintiff's counsel. The ultimate issue on appeal is whether the district court erred in awarding a substantially lower amount of fees than plaintiff's attorneys requested. In the course of deciding that issue we must confront the important procedural question of how parties contesting fee petitions must raise their challenges thereto.
 
 
 2
 We conclude that, generally, such parties need not submit counter-affidavits challenging the fee request, so long as they submit briefs that identify the portion of the fee request being challenged and state the grounds for the challenge with sufficient specificity to give the fee applicants notice that they must defend the contested portion of their fee petition.[1] We hold that, with two exceptions, the defendants met this burden here. However, as plaintiff contends, the district court opinion was unclear as to the basis of its fee reductions. Among other things, it is unclear whether the district court rejected certain of the fees because it found them excessive in light of plaintiff's lead counsel's expertise (counsel who bill at a high rate should take fewer hours to do the work) and because of the ministerial nature of co-counsel's duties (which should command a lower rate), or because the court believed that the fees claimed were disproportionate to the amount that the plaintiff recovered, or because the plaintiff recovered only on one of the claims that she alleged in her complaint. Furthermore, the district court erred in analyzing the reasonableness of the fee award by applying several factors that this Court has held are relevant only to the question whether fees should be awarded, not to the appropriate amount of a fee award. Consequently, we will vacate the district court's fee award and remand this case to it for clarification of the basis of its award and further action consistent with this opinion.
 
 
 3
 The plaintiff has also raised an issue as to the accuracy of the district court's calculations. We believe that the better practice is to raise such mathematical contentions on a motion for reconsideration in the district court. We will therefore leave these allegations for the district court on remand.
 
 I.
 A.
 
 4
 Commencing in 1977, plaintiff Joyce Bell worked as a bookkeeper for United Princeton Properties, Inc. ("UPP"), a New Jersey real estate investment and syndication firm. While Bell was employed by UPP, the firm maintained and contributed to two ERISA-qualified pension plans for the benefit of its employees. Bell was entitled to receive retirement benefits from both plans. However, in May 1985, Bell was allegedly forced to resign from her position because she refused to falsify business records. See Complaint at 3, JA at 6. Upon leaving, Bell requested immediate payment of her vested share in both pension plans. UPP refused, taking the position that it was not required to pay her until she reached age 60.
 
 
 5
 On February 19, 1986, Bell brought suit in the district court for the District of New Jersey against UPP, two of UPP's owners (both individuals), the two pension plans, and the trustees and administrators of the plans.[2] Bell's complaint alleged that, under the terms of the plans, UPP was obliged to pay to her the accrued benefits due her under the plan within one month of her separation from service, and that failure to do so violated ERISA. See Amended Complaint at 15, JA at 33. It further alleged a number of other violations of ERISA. These included failure to disclose to plan participants the terms of the plans, failure to obtain bonds for the pension plan fiduciaries, violation of ERISA's minimum vesting standards, and failure to maintain required records. Bell also brought suit on behalf of the plans, contending, inter alia, that there had been mismanagement of plan assets,[3] and that the plan had enrolled ineligible participants. Finally, Bell alleged violations of New Jersey's racketeering laws.
 
 
 6
 The parties subsequently settled the matter, and the court approved the settlement on August 25, 1987. The content of the settlement, in relevant part, is as follows: (1) Bell would immediately be paid $33,721.00, which represented her interest in the pension plans; (2) Bell would be paid $8,139.50 as "general damages" for the delays in providing required plan documents; (3) all claims and counterclaims would be dismissed with prejudice; (4) Bell's attorneys, Frederic J. Gross and P. Kay McGahen, would not represent others with claims against the UPP pension plans; (5) "[i]n the absence of any supplementary agreement, defendants [would] pay plaintiff's reasonable costs and reasonable attorneys' fees, including reasonable costs of investigation, in such amounts and for such matters as are fixed by the United States District Court on the formal application of plaintiff's counsel"; and (6) interest would begin to accrue on all unpaid costs and attorneys' fees 21 days after the application for fees was filed with the District Court, at the rate of 12% calculated daily and compounded annually. See Stipulation of Settlement, JA at 240-43. Consequently, after the settlement, the only item left for the court to dispose of was attorneys' fees.
 
 B.
 
 7
 On August 14, 1987, Bell petitioned the court for $74,804.51 in attorneys' fees and costs. This amount represented the amount of time spent on the case by Gross, McGahen, and Gross's law clerk, multiplied by their respective billing rates--$150 per hour for Gross, $125 per hour for McGahen, and $25 per hour for the law clerk--plus their expenses. It also included a requested 20% enhancement for Gross's fees to compensate him for the risk of non-payment in the case, for the delay in payment inherent in the contingency arrangement, and for voluntarily restricting his practice by agreeing not to represent other plaintiffs against the UPP pension plans. See Magistrate's Op. at 2 n. 1, App. at 245. The court referred the matter to a Magistrate.
 
 
 8
 The pension plans did not file any counter-affidavits but argued in their several briefs that the amount Bell had requested on behalf of her attorneys was too high and that the use of a multiplier was unwarranted. They contended that this was essentially a simple suit, involving only the issue of when Bell would get her pension benefits. They also asserted that the relief Bell had obtained was minimal. More particularly, they alleged that the plaintiff had engaged in excessive discovery; that there had been unnecessary "double-chairing" by plaintiff's counsel at pretrial conferences and depositions; that the procedures used for client communication were unduly time-consuming; that Gross's billing rate in 1986 was lower than he claimed; that McGahen had overcharged for the largely ministerial services that she provided; that Bell's attorneys had unnecessarily engaged accountants; that the requested fee was grossly disproportionate to the amount Bell recovered; and that the fee request included a large amount of time spent on issues unrelated to Bell's claim for benefits. Bell filed a reply brief disputing the characterization of the suit as a simple suit that obtained only minimal relief and defending the reasonableness of the hours expended and the rates charged.
 
 
 9
 On March 3, 1988, the Magistrate filed a report recommending that Bell's attorneys recover all requested fees and costs, but not receive a lodestar multiplier. First, the Magistrate found that "plaintiff's recovery was not minimal. Her success could hardly have been more complete." Mag. Op. at 9, JA at 252. Second, the Magistrate rejected the defendants' contention that the attorneys' fees award should not exceed the amount that Bell recovered in the settlement. He reasoned that defendants "could have, but did not, place a cap on fees sought" (in the settlement agreement). Id. Third, he found the hours claimed by Gross and McGahen to be reasonable, rejecting the defendants' claim that the tasks assigned to McGahen of filing the court papers should have been delegated to a lesser-paid employee. Fourth, he accepted the fee rates requested by the attorneys and law clerk. However, he rejected the request for a multiplier for Gross's services, finding that the contingency of non-payment in this case was no greater than average, that no novel issues were involved, and that Gross should not receive additional compensation for agreeing not to take on other clients in suits against these defendants because that restriction was "in clear violation of the ethical rules of this court and of doubtful enforceability." Id. at 12, JA at 255. In the end, the Magistrate recommended awarding $66,634.01 to Bell's counsel for fees and costs.
 
 C.
 
 10
 The defendants filed objections to the Magistrate's Report and Recommendation with the district court. Although, once again, they did not file any affidavit, they contended in a letter brief to the district court that the Magistrate's recommendation
 
 
 11
 simply fails to evaluate whether all of the hours spent by plaintiff's counsel can be said to be reasonably related to the only claim which plaintiff engaged them to prosecute, and the only claim upon which plaintiff ultimately recovered.
 
 
 12
 Although plaintiff's severance from the defendants' employ involved unpleasant circumstances, there was only one real question between them regarding her retirement plan benefits: were they payable soon after she left, or were they to be paid when she reached age 60-65? The resolution of this issue should have been straightforward....
 
 
 13
 Defendants' Letter Br. at 2, JA at 260.
 
 
 14
 The defendants "emphatically" challenged the assertion of Bell's counsel that their time "was spent in a manner reasonably related to their client's claim for benefits. Lawyers at their level could not require more than 75 or 100 hours to understand both the facts of this case and the relevant law bearing upon whether plaintiff's benefits were payable upon severance or at retirement age." Id. at 3, JA at 261. The Defendants also invited the district court to consider the briefs that they had submitted to the Magistrate. Id. at 3-4, JA at 261-62. Bell too filed an objection, contending that the Magistrate erred in refusing to award Gross's requested 20% multiplier.[4]
 
 
 15
 In ruling on these cross-objections, the district court substantially decreased the award to plaintiff's counsel from the amount recommended by the Magistrate. The district court began by setting forth several factors that this Court has identified as relevant in determining whether fees should be awarded in ERISA cases, which are governed by a statute that provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. Sec. 1132(g)(1). These factors are:
 
 
 16
 (1) the offending parties' culpability or bad faith;
 
 
 17
 (2) the ability of the offending parties to satisfy an award of attorneys' fees;
 
 
 18
 (3) the deterrent effect of an award of attorneys' fees against the offending parties;
 
 
 19
 (4) the benefit conferred on members of the pension plan as a whole; and
 
 
 20
 (5) the relative merits of the parties' positions.
 
 
 21
 Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir.1983). Although this Court, in Ursic, found these factors to be relevant only to the question whether fees should be awarded, the district court found that these factors "will help the Court arrive at reasonable fees and costs ... which is contemplated by the settlement agreement between the parties." Dist.Ct.Op. at 2 (June 29, 1988), 1988 WL 68927, JA at 276.
 
 
 22
 The court went on to quote dicta from Ursic suggesting that, in a " 'run-of-the-mill case,' " attorneys' fees should not be grossly disproportionate to the amount that the plaintiff recovered. Id. at 4, JA at 278 (quoting 719 F.2d at 677-78). The court found that the instant case was "relatively straightforward and the issues were narrow; i.e., when would plaintiffs receive her benefits.... There is only an individual, nominal benefit, and the Court notes the absence of a societal benefit." Id.
 
 
 23
 The district court proceeded to decrease the lodestar for Gross that the Magistrate had recommended. The court agreed with the contention raised by the defendants in their brief that the hours claimed by Gross were excessive in light of his expertise in ERISA law. The court found that Gross had billed over 45 hours for work on the complaint and the amended complaint, and that "[a]side from work on the brief, over 45 hours [were] spent on researching." The court also found that "over 45 hours were spent either on the telephone or in meetings with Ms. McGahen." Implementing its determination of excessiveness, the court then subtracted "35 hours from the time spent on the Complaint and Amended Complaint, 45 hours from the combined time spent on the brief and researching, and 30 hours from telephone calls and conferences with Ms. McGahen," a decrease amounting to 110 of the 297.85 hours claimed by Gross. Id. The court denied Gross's request for a multiplier on the ground that there were no special circumstances warranting it.
 
 
 24
 Next, the court completely disallowed the application for fees on behalf of Gross's law clerk, finding that "[t]here is no indication of what services were performed, or that they were in fact necessary." Id. at 6, JA at 280. The court also reduced McGahen's lodestar by fifty of the 108.10 hours that she had claimed, "to reflect the fact that she was primarily responsible for filing and serving papers," id. at 6-7, JA at 280-81, ministerial acts as defendants had contended. The Court also noted "an absence of [McGahen's] involvement in achieving a benefit (settlement) for the client as well as an absence of her involvement in substantive matters." Id. In the end, the court cut down the Magistrate's recommended fee and cost award of $66,643.01 to $43,423.
 
 II.
 
 25
 Bell appeals from the order of the district court. She contends that the court erred in decreasing the fee award below the level recommended by the Magistrate, although she no longer contends that Gross should be given a multiplier for his services. In attorneys' fees cases, our scope of review of the legal standards that the district court used in calculating the lodestar is plenary, see Student Public Interest Research Group v. AT & T Bell Laboratories, 842 F.2d 1436, 1442 (3d Cir.1988); we will reverse factual findings only if they are clearly erroneous, see id.; and, as long as an allegation of legal error is not involved, we will upset a district's court judgment with respect to the reasonableness of the lodestar request only if the court has abused its discretion. See Blum v. Witco Chemical Corp., 829 F.2d 367, 368 (3d Cir.1987).A.
 
 
 26
 Bell first contends that the district court erred as a matter of law by "sua sponte" reducing the fee award from the amount requested in the fee petition.[5] Bell cites to our opinion in Cunningham v. City of McKeesport, 753 F.2d 262 (3d Cir.1985) ("Cunningham I "), a case that involved the calculation of attorneys' fees pursuant to 42 U.S.C. Sec. 1988 (1982). That statute allows courts to award reasonable attorneys' fees to parties who prevail in civil rights suits brought under 42 U.S.C. Sec. 1983 (1982). In Cunningham I, the district court substantially reduced the amount of fees requested in the plaintiff's fee petition, even though the defendants had never "challenge[d] ... the accuracy of the [plaintiff's] affidavit" in support of the fee petition. 753 F.2d at 265-66. We reversed, holding that a district court in a statutory fee case may not reduce the number of hours claimed by an attorney if the adverse party has declined to "raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure." Id. at 267. Cunningham I recognized one narrow exception: a judge may reduce requested fees with respect to matters within the judge's personal knowledge--for example, the amount of time spent by counsel at trial or in conference with the judge. Id.
 
 
 27
 In so deciding, we reasoned first that sua sponte reduction of a fee request deprives the fee applicant of her entitlement to "to offer evidence in support of the reasonableness of her request." Id. at 267. And second, because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative. Id.[6]
 
 
 28
 Bell contends that the principle announced in Cunningham I that a judge may not sua sponte reduce a request for attorneys' fees should extend beyond civil rights cases and apply equally to ERISA cases. We agree. The reasoning articulated in Cunningham I with respect to this principle is not unique to the area of civil rights, and we can see no reason to create a different jurisprudence of fee awards in ERISA cases. Cf. Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 762 F.2d 272, 275 (3d Cir.1985) (holding that the same standards apply for setting "reasonable" attorney's fees under the Clean Air Act's fee shifting provision as under 42 U.S.C. Sec. 1988), modified on other grounds, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), rev'd on other grounds, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); see also Independent Federation of Flight Attendants v. Zipes, --- U.S. ----, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989).
 
 
 29
 We must therefore determine whether the defendants in the case sub judice met the Cunningham I standard of creating an issue with respect to the reasonableness of the fee petition. Bell points out that, as in Cunningham I, the defendants in this case offered no contrary affidavit challenging the accuracy of the fee petition, and submits that any objection to the petition is waived. Appellant's Br. at 25. The defendants contend that they were not required to file contrary affidavits because their brief before the district court, which incorporated by reference the briefs submitted to the Magistrate, raised the issues upon which reduction was granted. Appellees' Br. at 8.
 
 
 30
 The first question we must address therefore is whether Cunningham I requires that parties challenging a fee petition produce affidavits or other evidence to create an issue as to the reasonableness or accuracy of the fee petition or whether it is enough for a party to make its challenge in its answering papers or brief to the court. Cunningham I did not decide the issue because in that case the defendants neither produced counter-affidavits nor challenged the reasonableness of the time spent by the plaintiff's attorneys in any answer or brief. We believe that the two justifications for disallowing sua sponte fee reductions articulated in Cunningham I mandate only that a judge not decrease a fee award based on factors not raised at all by the adverse party. We see no reason to require that parties objecting to the fee request submit affidavits so long as answers or briefs, if sufficiently specific, can serve the same function of putting the applicant on notice that it must defend its fee petition.
 
 
 31
 This case illustrates the efficacy of briefs in meeting this notice function. Bell's attorneys were able to (and did) submit reply briefs responding to the allegations of excess raised in the defendants' briefs, both before the Magistrate and before the district court. We read Cunningham I as holding only that a court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate, either by filing affidavits, or, in most cases, by raising arguments with specificity and clarity in briefs (or answering motion papers).
 
 
 32
 We note however, that, to the extent the challenger seeks to raise a factual issue--for example, a claim that the fee applicant's billing rate was lower than claimed--he or she must introduce affidavits averring the facts upon which the challenge is based. Affidavits are required in such instances because statements made in briefs are not evidence of the facts asserted. As Cunningham I makes clear, the district court, in counsel fee litigation, can never serve as an "expert witness" and may only serve as fact witness when the facts at issue are wholly within its personal knowledge. Thus, with respect to factual issues, the court must be presented with evidence and must make findings based on the evidence.
 
 
 33
 Turning to the required level of detail, we emphasize that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive. In order to be sufficient, the briefs or answers challenging the fee request must be clear in two respects. First, they must generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable.[7] The briefs must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request.
 
 
 34
 However, although the respondent's objections to the fee petition must be clear, a party challenging a fee petition need not always challenge specific time entries and have the court find that some "specific time entry was unreasonable or unnecessary," Appellant's Br. at 28, in order to prevail. Entries in a fee applicant's time sheets usually reflect only generally the type of work in which counsel was engaged. It would be nearly impossible, or at least extraordinarily burdensome, for parties who wish to contend that the time spent by a fee applicant was excessive in light of counsel's expertise, or in light of the simplicity of the case, or who wish to raise some similar contention that might affect an entire category of work done by counsel, to point to all the entries that they believe to be unreasonable. The standard proposed by Bell would effectively bar those challenging fee petitions from ever prevailing on such objections. We believe that, in general, the party raising such challenges, which affect an entire category (or several categories) of work, need only specify with particularity the reason for its challenge and the category (or categories) of work being challenged; it need not point to each individual excessive entry.
 
 
 35
 It bears noting that the district court retains a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In determining whether the fee request is excessive in light of particular categorical contentions raised by the adverse party, and in setting the amount of any reduction, the court will inevitably be required to engage in a fair amount of "judgment calling" based upon its experience with the case and its general experience as to how much time a case requires. In order to exercise its discretion fairly, a district court needs flexibility in deciding whether to reduce a fee request and, if so, by how much.
 
 B.
 
 36
 In the instant case, the defendants' challenge to the amount of time spent by Gross tests the outer limits of the specificity requirement. Although the issue is a close one, we hold that the challenge meets this requirement. We also hold, with less difficulty, that the challenge to the fee award requested by McGahen was raised with sufficient clarity. However, we hold that the district court erred by reducing the fee request for Gross's law clerk, because it was never challenged by the defendants. Cf. Missouri v. Jenkins, --- U.S. ----, 109 S.Ct. 2463, 2469-70, 105 L.Ed.2d 229 (1989) (holding that a law clerk's time is recoverable as part of attorneys' fees under Sec. 1988).
 
 
 37
 The district court reduced the time spent by Gross because it found the request to be excessive in light of Gross's expertise in ERISA law. Excessiveness of time spent in light of an applicant's expertise is a legitimate reason for reducing a fee award. See Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir.1983) ("A fee applicant cannot demand a high hourly rate--which is based on his or her experience, reputation, and a presumed familiarity with the applicable law--and then run up an inordinate amount of time researching that same law.").
 
 
 38
 The defendants had argued in their brief to the district court that lawyers at Gross's level "could not require more than 75 or 100 hours to understand both the facts of this case and the relevant law bearing upon whether plaintiff's benefits were payable upon severance or at retirement age." Defendant's Letter Br. to Dist.Ct. at 3, JA at 261. They thus raised with sufficient clarity the issue that the fee request was excessive in light of Gross's ERISA experience.
 
 
 39
 The troubling facet of the defendants' challenge is that they never identified with precision the areas in which the district court reduced the fee petition--work on the complaints, research time, and conferencing--as areas for which the number of hours billed was excessive. We believe, however, that the defendants' challenge, although not a model of clarity, was sufficient to notify Bell that the defendants were challenging the time that Gross spent researching and conferencing. However, we do not believe that the defendants sufficiently challenged the time that Gross spent drafting the two complaints.
 
 
 40
 Although the defendants' briefs do not explicitly mention research, such a challenge is implicit in their argument that Gross did not need much time to understand "both the facts of this case and the relevant law." Id. As for the time spent conferencing with McGahen, defendants contended that because Gross's billing sheets did not reflect any conferences with Bell, Bell must have met solely with McGahen, and McGahen must have then met with Gross to relay this information. Defendants contended that "[t]his procedure was, quite obviously, inordinately cumbersome and resulted in unnecessary time spent on the matter." Defendants Medina and Stanley's Letter Br. to Magistrate at 9 (Sep. 30, 1987), JA at 200. Thus, Bell was put on sufficient notice that she must justify the time spent by the two attorneys in conference.
 
 
 41
 The court's reduction of the time spent by Gross drafting the complaint is, however, a different matter. Although the defendants, in their briefs to the district court and the Magistrate, alleged generally that Gross spent too much time on this case in light of its simplicity and his expertise, and that Gross wasted time on issues that were not related to the issue on which Bell ultimately recovered, they never identified the drafting of the complaints as a problematic area. Consequently, although Bell was given an opportunity to contest the defendants' characterization of the suit, she was never put on notice that she needed specifically to explain the amount of time spent on the complaint. We therefore believe that the district court erred in reducing the amount claimed on behalf of Gross with respect to drafting the complaints.
 
 
 42
 The defendants' challenge to McGahen's lodestar was made with greater clarity. In their briefs before the Magistrate, which were incorporated by reference into their brief before the district court, defendants contended that McGahen's lodestar was excessive in light of the fact that she provided "purely ministerial [services] which could have been performed by a paralegal or other support staff members." Defendants Medina and Stanley's Letter Br. to Magistrate at 7, JA at 198. This is a legitimate ground for decreasing a lodestar. See Delaware Valley Citizens' Council for Clean Air, 762 F.2d at 279 (District court did not abuse its discretion in setting a rate of $25 an hour "[f]or work associated with legal work but which required little or no legal ability."). Although the defendants urged that the district court decrease the hourly rate requested by McGahen, instead the court reduced the number of hours claimed by McGahen. However, we do not believe that this runs afoul of Cunningham I. As we see it, Cunningham I does not require that the type of reduction made by the court be exactly the same as that requested by the adverse party, as long as the fee applicant is given sufficient notice to present his or her contentions with respect to the reduction that the district court ultimately makes. In this case, Bell had an opportunity to respond and did respond to the allegation that McGahen's lodestar should be reduced because of the allegedly ministerial nature of her services. See Plaintiff's Letter Reply Br. to Magistrate at 12-13 (Oct. 8, 1987) ("Ms. McGahen's responsibilities in this litigation were by no means limited to routine or ministerial chores."), JA at 228-29. Bell has not identified any respect in which her response would have differed had she known that a reduction would be made in the number of hours McGahen claimed rather than her hourly rate.
 
 
 43
 However, the defendants never challenged the request for fees for the law clerk. The district court's reduction of the hours claimed for the law clerk was sua sponte and thus runs afoul of Cunningham I.[8] In sum, we conclude that Bell was put on notice with respect to the challenges to Gross and McGahen's lodestars, but not with respect to the time claimed by the law clerk. Consequently, it was within the district court's discretion to reduce the amounts claimed by Gross and McGahen but the court erred in declining to award the law clerk's lodestar.
 
 C.
 
 44
 As the Supreme Court has stated, although it is essential to allow the district court latitude to exercise its discretion in setting a fee award, "[i]t remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Otherwise it is impossible for the reviewing court to assess whether or not the district court abused its broad discretion. Bell identifies several ambiguities in the district court opinion that make it difficult for us adequately to review its judgment. For example, she points to rhetoric in the district court's opinion that suggests that fee awards should be proportionate to a plaintiff's recovery. She also alleges that, in determining the reasonableness of the award, the district court erroneously applied principles announced by this Court in Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir.1983), that bear only on the issue of whether attorneys' fees should be awarded in ERISA cases. And she alleges that the district court made a number of computational errors. In contrast, the defendants urge us to defer to the broad discretion given to district courts in setting fee awards. Although we hold that the contentions raised with respect to Gross and McGahen were sufficiently specific such that the district court could reduce their fees in the way it did, we believe that, in light of the troubling and confusing strands in the district court's opinion that Bell identifies, a remand is warranted so that the district court can clearly express what it is doing. We cannot simply defer without knowing with certainty the reasons behind the district court's exercise of discretion.
 
 
 45
 1. Proportionality.
 
 
 46
 Near the beginning of its opinion, the district court quotes language from our opinion in Ursic which suggests that in an ordinary case fees should not be awarded that are disproportionate to the amount of relief obtained by the prevailing party. Dist.Ct.Op. at 4, JA at 278.[9] Although the district court cited Gross's expertise, the ministerial nature of McGahen's duties, and a perceived inadequacy of documentation of the law clerk's time to justify its specific reductions, Bell contends, based on the district court's quotation from Ursic and on the fact that the amount of fees awarded by the district is almost equal to the amount of money that she obtained under the settlement, that the district court in fact reduced the fee award merely because it was disproportionate to the amount that Bell recovered. Bell charges that this constitutes reversible error.
 
 
 47
 In City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), a plurality of four Justices stated that although the amount of damages awarded is "one of many factors that a court should consider in calculating an award of attorney's fees" pursuant to 42 U.S.C. Sec. 1988, there is no requirement under section 1988 that an award of attorneys' fees be proportional to the damages awarded to the plaintiff. 477 U.S. at 574, 106 S.Ct. at 2694 ("We reject the proposition that fee awards under Sec. 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."). Four other Justices dissented, contending that the plaintiff should have to demonstrate a reasonable relationship between the amount of the recovery and the amount of the fee, and that the fee could only be disproportionate in cases in which there is an identifiable specific benefit to other parties or if the defendants had through bad faith prolonged the litigation. Id. at 588-96, 106 S.Ct. at 2701-05 (Rehnquist, J., dissenting). Justice Powell concurred in the judgment, taking the position that disproportionate fee awards are permissible, but possibly suggesting that disproportionality is warranted only when the attorneys have vindicated the public interest. Id. at 586 & n. 3, 106 S.Ct. at 2700 & n. 3 (Powell, J., concurring in the judgment).
 
 
 48
 Prior to Rivera, this Court, in Cunningham I, 753 F.2d 262, invalidated a negative multiplier in a civil rights attorneys' fees case that the district court had employed because it believed that the fee applicant "did not successfully advance new law which might serve the public interest in the future." We held in Cunningham I that no prior case had suggested that it was appropriate to employ a negative multiplier simply because "the right in question was by its nature singular to the plaintiff." 753 F.2d at 268-69. We pointed out that although a district court has a great deal of discretion in setting a fee award, its discretion is bounded by a "carefully crafted set of rules" that have not "been abandoned in favor of some standardless rule of district court gestalt." Id. at 269. The Supreme Court vacated our judgment and remanded for reconsideration in light of Rivera.
 
 
 49
 In Cunningham II, 807 F.2d 49 (3d Cir.1986), following the plurality opinion in Rivera, we reaffirmed the holding of Cunningham I that a negative multiplier was not warranted simply because a civil rights case did not vindicate the public interest. We declined to adopt a position akin to Justice Powell's, which would have drawn a distinction between civil rights suits that vindicate the public interest and those that have merely a private effect, reasoning that this view represented the opinion of only one Justice, rather than a compromise position commanding a majority of the court. 807 F.2d at 53 & n. 2. We further disagreed with Justice Powell that "only the rare case justifies disproportionate fee awards." Id. at 54.
 
 
 50
 The answer to the question whether a district court in an ERISA case may reduce a fee request merely because it is disproportionate to the plaintiff's recovery is not self-evident. Up until now we have avoided creating varying jurisprudences for calculating fee awards under what now are hundreds of feeshifting statutes.[10] See supra at 719-20. Bell contends that the plurality opinion in Rivera should be applied to ERISA cases as well, and that it supplants the proportionality dicta announced in Ursic. See supra at 723 n. 9. In contrast, the defendants contend that there are important distinctions between ERISA and civil rights cases that bear on the appropriateness of allowing decreases for mere disproportionality.
 
 
 51
 However, we need not reach the issue of proportionality at this juncture. As noted above, although the district court quoted the Ursic language, it purported to make its reductions not based on a theory of proportionality, but instead because of Gross's expertise, the ministerial nature of McGahen's tasks, and the purported lack of documentation of the law clerk's time. The district court nowhere articulated that its reduction was based on a theory of proportionality, and thus it is not appropriate for us to address the question of proportionality at this time.
 
 
 52
 Nevertheless, the intimations of proportionality in the district court opinion confuse us as to what really served as the grounds for the court's reduction of the requested fee award. As noted above, we cannot adequately review a district court's judgment if the district court does not tell us with some degree of clarity what the basis for its judgment is. We therefore will vacate the district court's order and remand the case so that the district court can more clearly express its grounds for reducing the fee award in this case.
 
 
 53
 2. The Ursic Factors.
 
 
 54
 At the beginning of its opinion, the district court also purported to base the decrease in the requested fee award on consideration of several factors articulated in Ursic, which we have spelled out above. See supra at 717-18. Bell contends that reliance on the Ursic factors was erroneous. We agree. As they were set forth in Ursic, they apply only to the question whether a fee should be awarded; the Ursic court did not employ them in assessing the reasonableness of the requested fee. In the instant case, however, the district court did not need to determine whether fees should have been awarded; the settlement provided that Bell's attorneys would be awarded reasonable fees. Instead, and without explanation, the district court used the Ursic factors to help it assess the reasonableness of the fee request. It is unclear whether this error affected the district court's ultimate conclusion as to the reduction of the fee request. However, the citation to Ursic confuses matters and further justifies a remand for clarification.
 
 
 55
 3. Hensley reduction.
 
 
 56
 In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that in cases in which a party who is entitled to attorneys' fees fails to prevail on claims that are unrelated to the claims on which that party prevailed, the court awarding attorneys' fees should exclude the amount of time spent by counsel on the unrelated claims. See 461 U.S. at 434-35, 103 S.Ct. at 1939-40. The Court also held that when such a litigant prevails on only a subset of a group of related claims, the fee award should be reduced if and only if the party did not receive full relief. See id. at 435-36, 103 S.Ct. at 1940-41.
 
 
 57
 The district court in the instant case did not explicitly state that it was engaging in a so-called Hensley reduction because of a failure of Bell to prevail on the unrelated claims raised in her complaint or a failure to achieve full relief. However, the language of the district court's opinion at some points suggests that this was what the district court was trying to effect. For example, the district court explained that "the matter was relatively straightforward and the issues were narrow." Dist.Ct.Op. at 4, JA at 278. Furthermore, the court concluded that Bell received only a "nominal benefit." Id. We express no opinion at this juncture as to the appropriateness of a Hensley reduction in the instant case. This is another matter which the district court should clarify on remand.
 
 
 58
 4. Calculation of the fee award.
 
 
 59
 Bell alleges that the district court opinion was riddled with mathematical errors. In particular, she challenges as clearly erroneous the district court's finding with respect to Gross's time sheets that "over 45 hours was spent on the complaint and the amended complaint[;] ... excluding work on the brief, over 45 hours was spent on researching[;] ... [and] over 45 hours were spent either on the telephone or in meetings with Ms. McGahen," Dist.Ct.Op. at 5, JA at 279.
 
 
 60
 We believe that the better practice in raising such computational challenges is first to bring a motion for reconsideration in the district court. It is difficult for the Court of Appeals to reconstruct the mathematics used by the district judge, and thus difficult for us to assess the merits of such claims. In contrast, usually it would be fairly easy for the district court to recheck its work in response to allegations of errors in calculation and either to adjust the fee award accordingly or to explain why the calculation was not erroneous. In the instant case, in which we have already determined that a remand is appropriate, we will leave these allegations of computational error for the district court to consider on remand.[11]
 
 
 61
 The order of the district court will be vacated, and the case remanded to that court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 However, in cases in which the party disputing a fee petition seeks to attack the factual accuracy of the fee applicant's claim, the challenger must submit an affidavit setting forth his or her factual contentions. See infra at 720
 
 
 [2]
 The complaint was later amended to substitute as a defendant Realty Corporation of Princeton, the successor to UPP, and to add an additional defendant, James F. Farrell, who was a limited partner in a partnership in which one of the pension plans allegedly held a 99% equity interest
 
 
 [3]
 According to the amended complaint, the defendants had caused the plans to hold the title to real estate on which garden apartments stood while the defendants leased the apartments to investors as tax shelters. Allegedly, UPP had the pension plans hold the land in order to permit operation of the tax shelters although the return on the investment was insubstantial. See Amended Complaint at 15-19, JA at 33-37. Bell also alleged that UPP's owners unlawfully caused themselves to be paid monies out of the pension plans as "finders' fees for locating and arranging the acquisition of various properties." Id. at 20, JA at 38
 
 
 [4]
 The district court had de novo review of the findings made by the Magistrate. See 28 U.S.C. Sec. 636(b)(1)(B); see also New Jersey Local Rule 40(d)(5)
 
 
 [5]
 In this case, the award of fees is not being made pursuant to the fee-shifting provision of ERISA, 29 U.S.C. Sec. 1132(g)(1), but instead pursuant to the parties' settlement agreement. The only guidance provided by the parties as to the amount that should be awarded is a stipulation in the settlement that the fee assessed by the court should be "reasonable." However, we believe that in determining whether the fee is reasonable in this case, it makes sense to employ the same standards that we utilize when assessing the reasonableness of fee awards in ERISA cases where the fees have been awarded pursuant to statute. We note that, in presenting their respective positions, both sides rely on cases in which fees were awarded pursuant to statutory fee-shifting schemes
 
 
 [6]
 Cunningham I was vacated and remanded to this Court for reconsideration in light of the Supreme Court's opinion in City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). See 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). However, on remand, we found that Rivera did not affect the outcome or reasoning of Cunningham I. See Cunningham v. City of McKeesport, 807 F.2d 49, 52-53 (3d Cir.1986) ("Cunningham II ")
 
 
 [7]
 If the adverse party seeks to challenge the hourly rate claimed as unreasonable, it must similarly state the grounds for the challenge with some degree of specificity
 
 
 [8]
 Furthermore, the district court erred in stating that there was no documentation with respect to the law clerk's time. The law clerk's time is reflected in the time sheets that Gross submitted. It can be differentiated from the time claimed by Gross because it has the law clerk's initials next to it. It appears that the district court inadvertently attributed the law clerk's time to Gross, and counted it as if it were research time for which Gross was seeking personal compensation
 
 
 [9]
 In Ursic, we determined that the district court did not err in calculating the applicant's lodestar, but went on to consider the appropriate way to calculate a lodestar as an example of how "a district judge must cast a critical eye on the award request." 719 F.2d at 676. We stated in dicta that
 [i]f ... the case is run-of-the-mill, produces minimum benefits and only for the prevailing party, then the same fee reduction that would be employed by a competent practitioner in adversary cases should be applied by the district court. The mere fact that a fee is authorized by statute does not empower the courts to set extravagant or disproportionate fees.
 Id. at 678.
 
 
 [10]
 A Westlaw search of the United States Code for the term "attorney fee" turns up 327 different statutes
 
 
 [11]
 Bell alleges two additional errors. First, she contends that it was inappropriate for the district court to reduce the amount of fees recommended by the Magistrate because the defendants did not challenge any particular portion of the Magistrate's report as they were required to do under New Jersey Local Rule 40(D)(5). That rule provides in relevant part:
 Any party may object to the Magistrate's proposed findings recommendations or report under this Rule.... Such party shall file with the clerk and serve on all parties written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made.... A Judge shall make a de novo determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate.
 We believe that the objections raised in the written brief to the district court were sufficiently specific to meet the mandate of this rule. Hence, we need not reach the issue of what remedy is warranted for violations thereof.
 Bell also contends that the district court erred by failing to award 12% interest on the fee award, as required by the settlement agreement. The defendants concede that Bell is entitled to this interest. On remand, the district court should order that 12% interest be paid on the amount awarded.