**Joseph DAVIS, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**RIDDLE & ASSOCIATES, P.C., and Jesse Riddle, Defendants.**

**Civil Action No. 2:07–cv–00284–LDD.**

United States District Court, E.D. Pennsylvania.

Sept. 22, 2008.

---

Theodore E. Lorenz, Cary L. Flitter, K. Timily Frazier, Lundy Flitter Beldecos & Berger, PC, Narberth, PA, for Plaintiff.

Boyd W. Gentry, Jeffrey Charles Turner, Surdyk Dowd & Turner Co. LPA, Dayton, OH, Richard J. Perr, Fineman Krekstein & Harris, P.C., Philadelphia, PA, for Defendants.

### ORDER

LEGROME D. DAVIS, District Judge.

AND NOW, this 22nd day of September 2008, upon consideration of Plaintiff's Motion for Attorney's Fees (Doc. No. 61), Defendants' Opposition thereto (Doc. No. 63), and Plaintiff's Reply Brief in Support thereof (Doc. No. 64), it is hereby ORDERED that Plaintiff's Motion is GRANTED.

## I. INTRODUCTION

On April 29, 2008, we granted an order preliminarily approving class settlement on this matter. On July 24, 2008, plaintiff's counsel filed a petition seeking $125,000 in total fees and costs pursuant to the fee-shifting provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(a)(3). (*See* Pl.'s Pet. 2.) Defendants opposed the petition on the grounds that the rates charged and the number of hours billed by counsel were excessive, and that plaintiff had no justification for litigating the matter beyond the date on which defendants issued their Offer of Judgment. (*See* Defs.' Opp'n 2–6.) The Court approved the final class settlement on September 5, 2008.

## II. DISCUSSION

This Court has discretion to determine the appropriate amount of the attorneys' fee award "so long as it employs correct standards and procedures and makes findings of fact not clearly errone-

ous." *Pub. Interest Research Group v. Windall,* 51 F.3d 1179, 1184 (3d Cir.1995) (quoting *Ne. Women's Ctr. v. McMonagle,* 889 F.2d 466, 475 (3d Cir.1989), *cert. denied,* 494 U.S. 1068, 110 S.Ct. 1788, 108 L.Ed.2d 790 (1990)) (internal quotation marks omitted). Also, this Court "must provide a concise but clear explanation of its reasons for a fee award." *Pa. Envtl. Def. Found. v. Canon–McMillan Sch. Dist.,* 152 F.3d 228, 232 (3d Cir.1998) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

Under governing precedent, the first necessary step in our analysis is to scrutinize counsel's "lodestar"—the product of the attorneys' reasonable hourly billing rate multiplied by the number of hours reasonably spent. *See Pa. v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Pa. Envtl. Def. Found.,* 152 F.3d at 231–32. We note that, although plaintiff's counsel has incurred fees and costs totaling approximately $143,000, they have limited their request to $125,000, the figure included in the Class Notice. (Pl.'s Rep. 7 n. 3.)

■ We begin by analyzing plaintiff's counsel's hourly billing rate. Defendants assert that the hourly rate demanded by plaintiff's counsel is inconsistent with the prevailing market rates and that plaintiff's counsel's hourly rates should be limited to those included in the attorneys' fees schedule composed by the Community Legal Services ("CLS"). (Defs.' Opp'n 6.) The CLS schedule, while a useful starting point, is not the exclusive tool to determine appropriate fees in the presence of other evidence. First, the CLS schedule provides rate ranges valid as of April 2006. (Defs.' Opp'n Ex. B.) However, when determining the appropriate rate, we must analyze the current market rates as of July 2008, the time of the fee petition.

*Lanni v. N.J.,* 259 F.3d 146, 149 (3d Cir. 2001). Also, the CLS schedule is based solely upon years of practice and takes into account no other factors. By contrast, under governing precedent, we must determine whether the rate is appropriate given an attorney's particular "skill, experience, and reputation." *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir.2001) (quoting *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990)).

■ The prevailing party must establish "with satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community" for similar work by lawyers of comparable qualifications. *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In the present case, Cary Flitter, the lead attorney for the plaintiff, has been a member of the bar for twenty-seven years, has extensive experience in consumer law and class actions, and has had numerous academic engagements related to consumer law. (Pl.'s Pet. Ex. E.) Theodore Lorenz, associate class counsel, has been a member of the bar for fifteen years and his practice has focused on consumer protection law and consumer class actions. (Pl.'s Pet. Ex. H.) Karen Frazier, associate counsel, has a distinguished academic record and has served as an editor to a legal journal. (Pl.'s Pet. Ex. E.) Class counsel have jointly submitted an affidavit from Mark A. Kearney, an established member of the bar who specializes in commercial litigation and who has risen to positions of leadership in bar organizations. (Pl.'s Pet. Ex. F.) Based on his experience in the local legal market and his knowledge of prevailing billing rates, Mr. Kearney opines that the rates charged by plaintiff's counsel are reasonable and appropriate given their qualifications. (Pl.'s Pet. Ex. F, 3–4.)

We find Mr. Kearney's evidence valuable in placing plaintiff's counsel's qualifications and rates in the context of the relevant local community. Defendants have not challenged Mr. Kearney's affidavit, nor have they questioned the professional experience of class counsel. Accordingly, we find the rates charged by plaintiff's counsel to be reasonable and fully in accord with the prevailing rates for similarly experienced and talented class counsel in this community.

■ We next turn to the number of hours billed by plaintiff's counsel. Defendants assert that plaintiff's counsel expended an unreasonable number of hours on the present litigation. Specifically, defendants contend that an attorney cannot reasonably demand a high rate based on his expertise and experience and then "run up an inordinate amount of time researching that same law." (Defs.' Opp'n 4) (quoting *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983)). Initially, "a plaintiff requesting attorney fees must provide evidence supporting the time claimed." *Pub. Interest Research Group,* 51 F.3d at 1188. Indeed, the Third Circuit Court of Appeals has held that "it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request." *Evans v. Port Auth. of N.Y. & N.J.,* 273 F.3d 346, 362 (3d Cir.2001). A line-by-line review of plaintiff's counsel's billing statements shows that counsel conducted approximately twenty-eight hours of legal research during the course of the litigation. (Pl.'s Pet. Ex. D.) A vast majority of the research conducted related to issues arising from the defendants' own actions during the litigation or as responses to defendants' own motions. More than half of the hours of legal research billed related to plaintiff's Motion to Compel Discovery, plaintiff's Motion to Strike the Offer of Judgment, and plaintiff's Brief in Opposition to Defendants' Motion for Judgment on the Pleadings. (*See* Pl.'s Pet. Ex. D.) Each of these motions involved a host of unique issues that would reasonably require even experienced attorneys to conduct research.

We also find relevant the fact that plaintiff's counsel was responsible for administering a class action, a task which itself consumed a large number of work hours. This task was rendered even more time-consuming by defendants' inconsistent statements regarding the number of potential class members. Defendants first asserted that they had only sent the offending letter to six individuals. (Pl.'s Pet. 15.) Later, after plaintiff subpoenaed the owner of the debt, defendants changed their position to state that the letter had been sent to thousands of people but that the addresses were no longer available for half of that group. *Id.* These obstacles to correctly identifying potential class members resulted in counsel having to spend significant additional time administering the class.

■ Defendants submit that the time spent on several of the tasks performed by plaintiff's counsel "took a significant amount of time to complete." (Defs.' Opp'n 5.) In contesting a motion for attorneys' fees, "the adverse party's submissions cannot merely allege in general terms that the time spent was excessive." *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir.1989). The party must identify specific grounds to support its assertion that the number of hours was unreasonable. *Id.* Here, defendants merely assert that the number of hours spent were excessive given the rates charged by plaintiff's counsel. (Defs.' Opp'n 4.) However, they do not specify the specific grounds upon which they base this claim, nor do they present any basis to determine what would have been a more reasonable amount of time. Defendants ask this Court to reduce the number of hours by

thirty percent without providing justification for such a mechanistic reduction. (Defs.' Opp'n 7.) This Court finds the number of hours of work billed by plaintiff's counsel to be reasonable and appropriate given the unique issues raised by the defense in the present litigation.

Defendants also contend that plaintiff had no justification for litigating the matter beyond February 28, 2008, when defendants served an Offer of Judgment. (Defs.' Opp'n 2.) In the Offer of Judgment, defendants offered a payment of $1,000 plus attorney fees and costs as well as 1% of defendants' net worth. *Id.* Defendants assert that the fact that plaintiff has now agreed to settle for $2,000 plus attorneys' fees and costs as well as 1% of defendants' net worth proves that there was no legitimate reason to continue the litigation beyond the date on which the Offer of Judgment was served. *Id.* Specifically, defendants argue that plaintiff's willingness to settle "for only an additional $1,000" over the Offer of Judgment amount proves that plaintiff continued to pursue the case "in an attempt to inflict a punishment of excessive attorney's fees." (Defs.' Opp'n 3.)

We find defendants' contention that the agreed-upon settlement amount is merely $1,000 over the amount offered to be incorrect. Defendants' Offer of Judgment did not specify the amount of defendants' net worth and therefore offered 1% of an unknown sum. (*See* Pl.'s Reply 2–6.) At oral argument, defendants advised this Court that they had never seriously contended that their net worth was zero. The record belies this claim. On two occasions proximate to the Offer of Judgment Defendants contended that their net worth was a negative sum. Defendants initially made this assertion approximately one month before the offer in their Response to Plaintiff's Second Set of Discovery Requests dated January 25, 2008. (Pl.'s Pet. Ex. L,

5.) Defendant Jesse Riddle repeated the contention only four days after the offer during his March 3, 2008 deposition. At that time, Riddle stated that his net worth, the figure upon which the Offer of Judgment was based, was negative because his liabilities exceeded his assets. Given that defendants steadfastly contended that their net worth was less than zero, the offer to pay 1% of that net worth amounted to an offer to pay nothing at all.

Following the rejection of the offer, plaintiff's counsel discovered substantial assets shifted by defendant Riddle to his wife and children. (Pl.'s Rep. 6.) Plaintiff and defendants have now agreed to settle for a payment of $2,000 plus fees and costs as well as 1% of defendants' net worth of $2.5 million, as contended by the plaintiff. (Pl.'s Pet. 5.) Therefore, plaintiff's counsel's work beyond the date of the Offer of Judgment resulted in a concrete settlement, which had an actual, not merely theoretical, value to the class members.

Defendants cite *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir.2000), for the proposition that the Court should consider plaintiff's rejection of the Offer of Judgment as a factor in determining the amount of attorneys' fees. (Defs.' Opp'n 2.) However, under Third Circuit precedent, an Offer of Judgment need not be considered as a factor where that offer is not "substantial." *UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir.2007). Here, the offer was plainly insubstantial, as it did not set forth a specific cash value and actually amounted to 1% of nothing. This does not constitute a "substantial" offer.

The Third Circuit Court of Appeals has also advised that the application of an Offer of Judgment in the class action context to a class representative is "strained" because it can create potential conflicts of interest for the named plaintiff. *Weiss v.*

*Regal Collections*, 385 F.3d 337, 344, 344 n. 12 (3d Cir.2004). In the present case, the offer was made to a class representative before the class was certified and would have amounted to a settlement without notice to the class. This presented a significant conflict of interest for the named plaintiff.

■ Given the significant increase in the settlement amount, the insubstantial nature of the Offer of Judgment, and the conflict of interest created by the offer, we find that plaintiff's decision to reject the offer was legitimate, reasonable, and fully in accord with his duties to the prospective class. We therefore find the rejection of the Offer of Judgment proper and subsequent legal expenses to be fully justified. Defendants' contentions are rejected.

## III. CONCLUSION

Accordingly it is hereby ORDERED that Plaintiff's Motion for Attorney's Fees (Doc. No. 64) is GRANTED. Plaintiff is awarded $125,000 in attorneys' fees and costs.