Daniel R. LOVING, Plaintiff,

v.

PIRELLI CABLE CORPORATION, a Delaware corporation; Pension Plan for Salaried Employees of Pirelli Cable Corporation; and Pirelli Cable Corporation, Plan Administrator of Pension Plan, Defendants.

Civil Action No. 97–449–RRM.

United States District Court, D. Delaware.

June 30, 1998.

John M. Stull, Wilmington, DE, for Plaintiff.

Barry M. Willoughby, Sheldon N. Sandler, Teresa C. Fariss & Scott A. Holt, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Christopher J. Collins, Bettina B. Plevan & Aliza Herzberg, Proskauer, Rose, Goetz & Mendelsohn, L.L.P., New York City, for Defendants.

Thomas S. Neuberger, Wilmington, DE, for John M. Stull.

## OPINION

McKELVIE, District Judge.

This is an employee benefits case. Plaintiff Daniel R. Loving is a former employee of defendant Pirelli Cable Corporation ("Pirelli"), a Delaware corporation. Loving is a participant in defendant Pension Plan for Salaried Employees of Pirelli Cable Corpora-tion ("the Plan"), an "employee pension benefit plan" as defined by § 3(2)(A) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(2)(A). Pirelli is also named as a defendant in its capacity as administrator of the Plan ("the Plan Administrator").

On June 26, 1997, Loving filed a complaint in the New Castle County Superior Court of the State of Delaware alleging that defendants wrongfully denied him accrued benefits under certain provisions of ERISA. On July 31, 1997, pursuant to 28 U.S.C. § 1441, defendants removed the case to this court. Loving filed a motion to amend the complaint to add a claim for equitable relief. Defendants subsequently filed motions to dismiss, for sanctions, and for attorney's fees. Defendants argue that Loving's complaint is frivolous because this court previously granted summary judgment in their favor on an almost identical complaint because it was time-barred by the applicable statute of limitations.

The following is the court's decision on these motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The court draws the following facts from the complaints filed in both this case and in the previous action, the parties' briefs and accompanying evidence, including the transcript of a hearing held in the previous action, a letter from defendants to Loving's attorney regarding the current case, and affidavits from defendants' attorneys documenting the work done, time spent, and fees charged for work on this matter.

### A. The 1994 Complaint

On April 20, 1994, John M. Stull, an attorney representing Loving in both this action and in the previous action, filed a complaint ("the 1994 complaint") in this court alleging that the same defendants named in the present matter, Pirelli, the Plan, and the Plan Administrator (collectively "the 1994 defendants" in the context of the 1994 complaint), wrongfully denied Loving benefits accrued under the Plan. See Daniel R. Loving v. Pirelli Cable Corporation, a Delaware corpo-

ration, *Pension Plan for Salaried Employees of Pirelli Cable Corporation, and Pirelli Cable Corporation, Plan Administrator of Pension Plan,* 94–205–RRM. The complaint arose out of Loving's twenty-six years of employment with Pirelli, and Loving's request for pension benefits.

Loving had worked for Pirelli from November 6, 1961, until November 9, 1987, at which time Pirelli involuntarily terminated Loving when it closed the plant in which Loving worked. Pirelli offered enhanced early retirement benefits to eligible employees terminated between October 20, 1987, and December 20, 1987. Loving's termination fell within this time period, and he inquired whether he qualified for the early retirement benefits. The Plan Administrator informed Loving that he was not eligible because the combination of his age and years of service did not equal sixty-five or more. It appears that in order to qualify for early retirement benefits, an employee's age and years of service had to add up to at least sixty-five.

In January 1988, the Plan Administrator informed Loving of the amount of his monthly retirement benefits under the terms of the Plan. Loving believed that the Plan Administrator incorrectly calculated this amount.

On October 31, 1990, nearly three years after the Plan Administrator first denied Loving's request for early retirement benefits and notified Loving of the amount of benefits he would receive under the Plan, Loving filed a claim for benefits with the Plan Administrator. Loving claimed that he was entitled to certain benefits under both the early retirement program and the Plan. On January 3, 1991, the Plan Administrator denied Loving's claim. The Plan Administrator denied Loving's subsequent appeal on April 22, 1991.

On April 20, 1994, three years after the denial of Loving's appeal, Stull filed the 1994 complaint in this court. The 1994 complaint asserts that Loving "was arbitrarily and capriciously denied accrued benefits under the Plan and VERP [the Voluntary Early Retirement Program] by not having his accrued benefit calculated by reference to credited service under the terms of the Plan to be

23.833 years." Count I claims that Loving "is entitled to benefits from the Plan and VERP and makes a claim for benefits under ERISA Sec. 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B), as to both plans, which benefits were arbitrarily and capriciously denied to plaintiff." Section 502(a)(1)(B) states that a participant or beneficiary in a plan may bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The 1994 complaint also asserts that "[d]uring October, 1987, plaintiff sought information on VERP in order to determine whether he would qualify for benefits under the terms of VERP, in that he had a service and age total of over 65," and that "[d]uring October, 1987, plaintiff was denied information on VERP by being advised by [Pirelli] that he would not qualify." Thus, Count II claims that "[a]s a result of [Pirelli's] failure to disclose and provide information to plaintiff on VERP, plaintiff was improperly denied access to information on VERP, in violation of ERISA Section 502(c)." Section 502(c) provides that any plan administrator

who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c).

The 1994 defendants filed a motion for summary judgment on the ground that the claims were barred by the applicable statute of limitations. On March 28, 1995, the court

heard oral argument on the question of whether the claims were time-barred.

Stull argued that Delaware's three-year statute of limitations governing contracts applied to the case. *See* DEL.CODE ANN. tit. 10, § 8106. Stull argued that the cause of action did not arise, and therefore, the three-year time period did not begin to run, until Loving exhausted his administrative remedies on April 22, 1991. Stull filed his complaint on April 20, 1994. The 1994 defendants argued that Loving's cause of action accrued and the statute of limitations began to run at the earliest in January 1988, when Loving was apprised of the amount of benefits he would receive, and at the latest on January 3, 1991, when the Plan Administrator initially denied Loving's claim.

At the oral argument the court stated that because the claims arise under ERISA, a federal statute without a built-in statute of limitations, it would look to state law for the proper limitations period. The court agreed that a three-year statute of limitations period applied. However, the court rejected the notion that the filing of an administrative action tolls the statute of limitations. The court concluded that the limitations period began at the earliest in January 1988, and no later than January 1991. Thus, the court concluded that Loving's claims were time-barred.

The court further stated that, within ten days of the entry of an order granting the 1994 defendants' motion for summary judgment, Stull could file a motion for reargument identifying case law speaking directly to the issue of whether a cause of action under ERISA does not arise until after the final exhaustion of the internal appeals process.

On March 29, 1995, the court entered an order granting summary judgment in favor of the 1994 defendants on the ground that the 1994 complaint was time-barred by the applicable three year statute of limitations.

Stull timely filed a motion for reargument. In the opening brief Stull requested that the "Court make clear that the only basis for accepting the statute of limitations as a bar to Plaintiff's claims is the application of the three-year period beginning January 3, 1991." On October 18, 1995, the court denied Stull's motion for reargument. In the order denying the motion, the court stated that Stull's brief did not direct the court to any case law addressing whether an ERISA benefits claim does not accrue until the internal appeals process is finally exhausted. Rather, Stull's argument was a "mere repetition" of the argument he had previously asserted—that the statute of limitations does not begin to run until the complainant has finally exhausted the internal appeals process.

Stull appealed this court's order to the Court of Appeals for the Third Circuit. On August 21, 1996, the Third Circuit entered an order affirming this court's October 18, 1995 order. Stull subsequently moved for rehearing en banc. On October 21, 1996, the Third Circuit denied Stull's motion for rehearing. Stull then filed a petition for a writ of certiorari with the United States Supreme Court. On May 27, 1997, the Supreme Court entered an order denying Stull's petition for a writ of certiorari.

### B. *The 1997 Complaint*

On June 26, 1997, Stull, again representing Loving, filed the complaint ("the 1997 complaint") in this action in the New Castle County Superior Court. The 1997 complaint asserts that Loving "was arbitrarily and capriciously denied accrued benefits under the Plan and VERP by not having his accrued benefit calculated by reference to credited service under the terms of the Plan to be 23.833 years." Count I claims that Loving "is entitled to benefits from the Plan and VERP and makes a claim for benefits under ERISA Sec. 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B), as to both plans, which benefits were arbitrarily and capriciously denied to plaintiff." Count I of the 1997 complaint repeats, verbatim, Count I of the 1994 complaint.

The only differences between the 1997 complaint and the complaint filed in 1994 are that the 1997 complaint includes a paragraph detailing the procedural history of the 1994 action, and that the 1997 complaint does not include the ERISA claim for denial of information.

On July 15, 1997, Bettina B. Plevan, defendants' attorney at the New York law firm of Proskauer, Rose, Goetz & Mendelsohn ("Proskauer, Rose"), sent Stull a letter regarding the complaint filed in Superior Court. Plevan wrote that the complaint

is in all material respects identical to Loving's prior lawsuit against these defendants. That lawsuit was dismissed on defendants' motion for summary judgment, which was affirmed by the Third Circuit. Accordingly, the present lawsuit is barred by the doctrine of res judicata. We demand that the new complaint be immediately withdrawn or we will seek appropriate remedies for your prosecution of a frivolous action, including an award of attorneys' fees and costs.

Please advise us no later than Friday, July 18 whether you will voluntarily withdraw the complaint. If you do not agree to do so we will remove this case to federal court, file a motion to dismiss, and seek other available relief for your frivolous conduct.

Stull apparently did not respond to Plevan's letter.

On July 31, 1997, pursuant to 28 U.S.C. § 1441, defendants removed the case from Superior Court to this court. Defendants filed an answer denying the allegations in the complaint, and asserting several affirmative defenses, including that the claims in the complaint are barred by the doctrines of res judicata and collateral estoppel, and that the complaint is time-barred by the applicable statute of limitations.

On August 12, 1997, Christopher J. Collins, another attorney at Proskauer, Rose, spoke with Stull and reiterated defendants' request that Stull voluntarily withdraw the complaint because it was barred by res judicata. Collins also told Stull that if he refused to withdraw the complaint defendants would file motions to dismiss, for attorney's fees and costs, and for sanctions pursuant to Federal Rules of Civil Procedure Rule 11. Collins encouraged Stull to research the law on res judicata. Stull apparently told Collins that he would not withdraw the complaint as he did not believe that it was baseless or frivolous.

### 1. Defendants' motion to dismiss and for attorney's fees and costs and Loving's motion to amend the complaint

On September 18, 1997, defendants moved to dismiss the complaint, apparently under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In their opening brief defendants argue that because the 1997 complaint is identical "in all material respects" to the 1994 action, the court should dismiss the complaint as barred by the doctrine of res judicata. Because they rely on matters outside the pleadings the court will treat this motion as a motion for summary judgment. See FED.R.CIV.P. 12(b)(6). See also Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir.1997) (noting that res judicata is an affirmative defense that can be the basis for either a motion to dismiss or a motion for summary judgment).

Defendants also seek an award of attorney's fees and costs pursuant to ERISA § 502(g)(1). Section 502(g)(1) provides that in an ERISA action "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (1998).

On October 2, 1997, Stull filed an answering brief. Stull argues that he filed the 1997 complaint in state court "in order to have the forum state review the applicable statute of limitations." Stull also argues that he filed the complaint "pursuant to 28 U.S.C. Section 1367(d) that allows for tolling the statute of limitations and the refiling of a claim that has been dismissed from federal court." Stull further argues that res judicata does not apply because "there was no judgment on the merits by virtue of an analysis as to the legal effect of federal regulations and other case authority," and because the court's denial of his motion for reargument does not "delve into the factual basis other [than] that certain dates were beyond the time determin[e]d to be applicable."

Stull also moved to amend the 1997 complaint to add a claim for "other appropriate equitable relief" pursuant to ERISA § 502(a)(3). See 29 U.S.C. § 1132(a)(3). Stull argues that Loving "is entitled to individualized equitable relief that would require the

plan administrator to correctly calculate his future pension benefit entitlement" because the Plan Administrator breached his fiduciary duties by incorrectly calculating Stull's benefits. Defendants argue that the court should not grant the motion to amend because the claims Stull seeks to add are based on the same set of facts as the claims on which the court previously granted summary judgment in favor of defendants. Therefore, defendants argue that they are barred by the doctrine of res judicata.

### 2. Defendants' motion for sanctions pursuant to Rule 11

On October 17, 1997, defendants filed a motion for sanctions against Stull pursuant to Federal Rules of Civil Procedure Rule 11 on the ground that filing the 1997 complaint constitutes a frivolous action. Defendants request that Stull be ordered to pay defendants' attorney's fees and costs incurred in defending against the 1997 complaint.

Rule 11 provides that a court may issue sanctions if a case is presented for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," if the claims presented are not "warranted by existing law," or if the allegations lack evidentiary support. *See* FED.R.CIV.P. 11(b). The sanctions issued must be "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED.R.CIV.P. 11(c)(2).

Defendants argue that because the 1997 complaint is "identical in all material respects" to the 1994 complaint, Stull should have known that these claims are barred by the doctrine of res judicata and never should have filed the 1997 complaint. Furthermore, defendants argue that because Stull represented Loving in the 1994 action, Stull is intimately familiar with the previous action, and a reasonable inquiry into the law would have apprised Stull of the fact that the 1997 complaint is barred by res judicata. Additionally, defendants notified Stull that res judicata applied, and gave Stull the opportunity to withdraw the 1997 complaint without any potentially negative repercussions.

On November 7, 1997, Stull filed an answering brief. First, Stull argues that sanctions are not appropriate because he filed the 1997 complaint in Superior Court in good faith and for the proper purpose of having the Superior Court determine the appropriate statute of limitations. Second, Stull appears to argue that sanctions are not appropriate because Rule 11 does not apply to a nonfrivolous action properly filed in state court and later removed to federal court.

### 3. Oral argument on all outstanding motions

On March 17, 1998, the court issued an order scheduling oral argument on all outstanding motions for March 25, 1998. The court further ordered that Loving attend the oral argument.

In response to the court's invitation, a representative from the Office of Disciplinary Counsel attended the oral argument. The Office of Disciplinary Counsel is established by Delaware Supreme Court Rule 64, and it is responsible for investigating "when necessary or appropriate all information coming to [its] attention which might be grounds for discipline or other action regarding the practice of law" in Delaware. *See* DEL.SUP.CT.R. 64.

### a. Affidavits showing attorney's fees and costs

On the day of the oral argument, defendants submitted an affidavit of Barry M. Willoughby, an attorney at Young, Conaway, Stargatt & Taylor, LLP ("Young, Conaway"), a Wilmington, Delaware law firm acting as local counsel for defendants. In the affidavit Willoughby states that Young, Conaway's books and records show that the total amount of attorney's fees and costs incurred defending the 1997 complaint equals $3,241.88. Willoughby also states that four attorneys have worked on the matter—Sheldon N. Sandler, at a billing rate of $260 per hour, Teresa C. Fariss, at a billing rate of $200 per hour, Willoughby, at a billing rate of $240 per hour through December 31, 1997, and $250 per hour after January 1, 1998, and Scott A. Holt, at a billing rate of $140 per hour. Attached to the affidavit is a billing record documenting the work done by each attorney, the date of and amount of time spent on the work, and the total amount of

fees between July 11, 1997, and September 19, 1997.

The billing record reports that from July 11, 1997, to September 19, 1997, Willoughby worked a total of 3.4 hours, and Holt worked a total of 5.2 hours on this matter, totaling $1,544 in fees. Their work included reviewing the case, discussing the case with Collins, researching § 1441 removal requirements and preparing the motion to remove, preparing an answer to the 1997 complaint, and researching and preparing the motions for summary judgment and for attorney's fees and costs. Additionally, the billing record reflects that during this time period Young, Conaway spent $348.62 in expenses, which includes a $145.20 copying charge, a $150 filing fee charge, and $53.42 in postage, long distance telephone call, fax, and delivery charges. Thus, during this time frame, Young, Conaway billed defendants $1,892.62.

Willoughby also states in the affidavit that from October 1, 1997, to the date of the oral argument, the total amount of unbilled attorney's fees equals $1,053, and the total amount of unbilled expenses equals $171.26. He does not state how much time each attorney has spent working on the case, or the nature of that work. Additionally, Willoughby estimated that the oral argument would last half of an hour, and that his presence at the oral argument would cost defendants $125. Thus, the total amount of unbilled charges equals $1349.26.

Collins submitted an affidavit stating that Proskauer, Rose's books and records show that the total amount of attorney's fees and costs incurred defending the 1997 complaint equals $34,167.25. In the affidavit Collins states that three attorneys have worked on the matter—Bettina B. Plevan, at a billing rate of $400 per hour, Collins, at a billing rate of $290 per hour through October 31, 1997, and $300 per hour after November 1, 1997, and Aliza Herzberg, at a billing rate of $235 per hour through October 31, 1997, and $245 per hour after November 1, 1997. Additionally, legal assistants working on the case between July and November 1997, billed at a rate of $85 to $100 per hour. Attached to the affidavit is a billing record documenting the work done by each attorney, the date of and amount of time spent on the work, and the total amount of fees between July 11, 1997, and November 25, 1997.

The billing record reports that Collins worked a total of 33.5 hours, Herzberg worked a total of 89.82 hours, Plevan worked a total of a quarter of an hour, and legal assistants worked over sixteen hours on this matter, totaling $32,168.75 in fees. Their work included writing a letter to Stull requesting withdrawal of the complaint, revising the § 1441 motion to remove, preparing an answer to the 1997 complaint, researching the doctrine of res judicata and related issues and preparing the motions for summary judgment and for attorney's fees and costs, and researching Rule 11 and preparing the motion for sanctions. Additionally, the billing record reflects that Proskauer, Rose spent $1,613.50 in expenses, including $1,236.99 for computerized legal research.

### b. *The oral argument*

At the oral argument, the court asked Stull why the claims in the 1997 complaint are not the same as the claims in the 1994 complaint, and therefore, why the 1997 complaint is not also barred by the statute of limitations. Stull stated that he filed the 1997 complaint in Superior Court because he wanted to "seek analysis of the statute of limitations as it would apply to Mr. Loving's benefits claim only." Stull further stated that he "was testing the Delaware [c]ourt's interpretation of its own statute of limitations." Stull referred to 28 U.S.C. § 1367(d) as the relevant law stating that once an issue has been litigated, the state court can revisit that issue.

Section 1367 provides the basis for a federal court to exercise supplemental jurisdiction over state law claims. Section 1367(a) states that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Section 1367(d) states that the

period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

*Id.* § 1367(d).

The court then addressed Loving personally. The court asked Loving whether it was his decision to file the 1997 complaint. Loving stated that after consulting with Stull he understood that it was appropriate to continue to pursue his claim for benefits by filing the 1997 complaint in state court. The court also asked Loving what was his economic relationship with Stull, and specifically whether he was paying Stull hourly, by contingency fee, or by retainer. Loving responded that he did not know, that he did not have a written agreement with Stull about payment, and that he had not paid Stull any money.

The court stated that it did not see any basis for the 1997 complaint, and that it did not understand Stull's asserted justifications for filing it. The court explained that while it was prepared to impose sanctions, it did not want to impose sanctions against Loving personally. The court also explained that although it did not see a basis for finding bad faith, it felt that Rule 11 sanctions against Stull should be granted. The court noted that it had other cases where Stull had represented a party, defendants had filed motions for sanctions and for attorney's fees and costs, and the court did not understand the theories and legal principles advanced by Stull.

The court specifically referred to an opinion it issued the day before in another ERISA case in which Stull represented the plaintiffs. *See George L. Bader, Walter Dulin, John Zimath, Thomas Russell, John Lennon, Sr., and Benjamin Panella, Jr. v. United Brotherhood of Carpenters & Joiners of America Local Union # 626 Pension Fund, Robert A. McCullough, Sr., Joseph P. Durham, Michael A. Stipo, James V. Healy, Blaine Streeper, and E. Andrew DiSabatino,* *Jr., Individually and as Trustees of Pension Fund, and as Plan Administrator of Pension Plan,* 95–463–RRM, Memorandum Opinion, March 24, 1998. In the *Bader* case, Stull submitted briefs on renewed motions for summary judgment which included numerous arguments that the court had previously addressed and conclusively ruled on. Defendants subsequently moved for Rule 11 sanctions and for attorney's fees and costs, arguing that Stull had pursued baseless ERISA claims.

In *Bader,* the court found that the "inattention to the court's decision imposed on defendants the burden of responding to arguments already made and decided, and is a waste of judicial time and resources." The court concluded

that Stull did not act in an objectively reasonable manner, and the imposition of Rule 11 sanctions would be appropriate under the circumstances. However, the court will not impose sanctions on Stull, as the court does not find sanctions a necessary measure in order to "discourage [Stull] from bringing baseless actions or making frivolous motions." *Bensalem Township v. International Surplus Lines Ins. Co.,* 38 F.3d 1303, 1314 (3d Cir.1994). Rather, the court cautions Stull to act more prudently in choosing which battles to continue to pursue in the future, and warns Stull that any future "misuse of the court's process" will result in appropriate sanctions.

At the conclusion of the oral argument, the court reiterated that it did not want to impose sanctions on Stull in a way that would be detrimental to Stull's ability to practice law. Therefore, the court strongly encouraged Stull to do four things before the court resorted to imposing sanctions. First, the court suggested that Stull have another attorney review the case, look at the principles cited by Stull, and if that attorney found a reasoned basis for filing the 1997 complaint, explain it to the court. Second, the court encouraged Stull to attempt to reach an agreement with defendants on how to settle the matter. Third, the court suggested that Stull consult with Disciplinary Counsel about this matter and about *Bader,* to see if Disci-

plinary Counsel could find a way to resolve the issue other than by imposing sanctions. Fourth, the court asked Stull to review defendants' affidavit for attorney's fees and costs and determine whether to request an evidentiary hearing on the issue.

Additionally, the court requested that defendants write a letter indicating what sanctions they believe would be appropriate. The court stated that it would be granting defendants' motion for attorney's fees and costs and would be imposing the fees and costs on Stull individually. The court also requested that defendants inform the court what is the source of funds for the approximately $37,000 in attorney's fees and costs incurred by defendants. In particular, the court inquired whether the Plan would be the source of the unpaid funds, thereby taking the money from otherwise entitled beneficiaries. Defendants' counsel said that although he previously had matters where the pension beneficiaries paid, he did not know who would pay in this particular matter.

### 4. *After the oral argument*

After the oral argument, the court received letters from both parties addressing what had occurred, and whether sanctions would be appropriate.

#### a. *Letter on behalf of Stull*

On April 22, 1998, Thomas S. Neuberger, an attorney in Wilmington, Delaware, submitted a letter to the court on Stull's behalf.

Neuberger stated that he consulted with Stull about what happened and that it appeared that Stull made a mistake in interpreting § 1367(d). As a consequence, Stull confused the difference between an independent state law legal theory over which the court could exercise supplemental jurisdiction pursuant to § 1367 and a legal argument for "the accrual of an action under the law concerning statutes of limitations." Neuberger further explained that Stull misread § 1367(d) due to an apparent misunderstanding of the purpose of supplemental jurisdiction. Neuberger attributed this misunderstanding to either "inadvertence or a lack of experience with supplemental jurisdiction."

Neuberger then addressed whether sanctions would be appropriate under the circum-

stances. Neuberger emphasized that Stull merely made a mistake, and that he did not file the 1997 complaint for an improper purpose or in bad faith. Neuberger also emphasized that Stull believed that his arguments were not frivolous and were warranted by existing law.

Neuberger concluded the letter by praising Stull, the nature of Stull's ERISA practice, and Stull's devotion to serving the needs of a specific group of clients. Neuberger urged the court not to impose monetary sanctions under Rule 11. Rather, Neuberger suggested that an appropriate sanction would be "to refresh his skills in the area of federal practice and procedure." Neuberger discussed Rule 11 and Third Circuit law interpreting Rule 11 to support the use of non-monetary sanctions. In particular, Neuberger cited to a recent Third Circuit opinion in which the court stated

> "This court has instructed the district courts that '[f]ee-shifting is but one of several methods of achieving the various goals of Rule 11,' that they should 'consider a wide range of alternative possible sanctions for violations of the rule,' and that the 'district court's choice of deterrent is appropriate when it is the minimum that will serve to adequately deter the undesirable behavior.' "

*Zuk v. Eastern Pennsylvania Psychiatric Inst. of Medical College of Pennsylvania*, 103 F.3d 294, 300–01 (3d Cir.1996) (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988)).

#### b. *Letter on behalf of defendants*

On April 28, 1998, Collins submitted a letter to the court responding to Neuberger's letter. First, Collins notes that Neuberger focused entirely on the propriety of imposing Rule 11 sanctions, and did not address defendants' motion for attorney's fees and sanctions pursuant to ERISA § 502(b)(1). Second, Collins notes that although Neuberger wrote the letter on Stull's behalf, the letter nevertheless "demonstrates that the prerequisites for an award of [Rule 11] sanctions against Mr. Stull have been satisfied" by acknowledging that the 1997 complaint was barred by res judicata and that there was no

legal basis under § 1367(d) for filing the 1997 complaint. Third, Collins notes that Neuberger does not address the fact that on several occasions defendants informed Stull that the 1997 complaint was barred by res judicata, and requested that he voluntarily withdraw it. Finally, Collins suggests that the most appropriate form of sanctions would be an award of attorney's fees and costs.

### c. *Other suggestions by the court*

At the March 25, 1998 oral argument, the court made additional suggestions to Stull and to defendant. Neither Stull nor defendants appear to have followed up on these suggestions. First, Stull has not made a request for an evidentiary hearing on the issue of attorney's fees and costs. Second, the court does not know whether Stull has had any contact with Disciplinary Counsel since the oral argument. Third, neither of the letters submitted by the parties indicate that they attempted to settle the matter. Fourth, defendants did not provide the court with further information regarding the source of the funds that would cover the attorney's fees and costs if Stull did not provide sufficient funds.

## II. *DISCUSSION*

### A. *Should The Court Grant Defendants' Motion For Summary Judgment?*

Defendants argue that the court should grant their motion for summary judgment because the claims asserted in the 1997 complaint are barred by the doctrine of res judicata. Stull asserts that he filed the 1997 complaint pursuant to § 1367(d) in order to have the Superior Court review the applicable statute of limitations. Stull also argues that res judicata does not apply because the court did not rule on the merits of the 1994 complaint.

The United States Supreme Court has explained that the doctrine of res judicata

provides that when a final judgment has been entered on the merits of a case. "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but

as to any other admissible matter which might have been offered for that purpose." The final "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever."

*Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (citations omitted). Accordingly, "[u]nder res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

In *Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 963 (3d Cir.1991), the Third Circuit stated that in order to ascertain whether res judicata applies, the court must answer three questions. First, the court must determine whether the cause of action asserted in the 1997 complaint is the same cause of action asserted in the 1994 complaint. *See id.* Second, the court must determine whether the parties in the 1997 action are identical to or in privity with the parties in the 1994 action. *See id.* Third, the court must determine whether the prior decision constituted a "final judgment on the merits." *Id.*

### 1. *Is the cause of action in the 1997 complaint the same cause of action asserted in the 1994 complaint?*

The first question the court must resolve in determining whether the 1997 complaint is barred by res judicata is whether the cause of action asserted in that complaint is the same as the cause of action asserted in the 1994 complaint. *See id.*

In *Lubrizol,* the Third Circuit, recognizing that " 'cause of action' cannot be precisely defined," stated that the court should look "toward the 'essential similarity of the underlying events giving rise to the various legal claims' " to determine whether the causes of action are the same. *Id.* (citation omitted). The Third Circuit further stated that "[i]n conducting this inquiry, we focus upon 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.' " *Id.*

(quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984)). It is additionally important " 'whether the wrong for which redress is sought is the same in both actions.' " *Id.* (quoting *Athlone*, 746 F.2d at 984).

Stull appears to argue that the 1997 cause of action is different from the 1994 cause of action for three reasons. First, Stull appears to argue that it is different because he omitted a claim for denial of information that was in the 1994 complaint. Second, Stull appears to argue that the 1997 complaint is different because he seeks to amend that complaint to include a claim for a breach of fiduciary duty. Third, Stull appears to argue that the 1997 action is different from the 1994 action because in the current matter Stull sought to have the Superior Court review the statute of limitations determination pursuant to § 1367(d).

The only difference that exists between the 1994 complaint and the 1997 complaint is that three years elapsed and during that time this court, the Third Circuit, and the Supreme Court issued decisions relating to the 1994 action. One paragraph detailing this history is included in the 1997 complaint. Absent this procedural history and the deletion of a claim for denial of information, the 1994 and 1997 complaints are identical. *See Angel v. Bullington*, 330 U.S. 183, 186, 67 S.Ct. 657, 91 L.Ed. 832 (1947) (stating that "[f]or all practical purposes, the complaint in the present action was a carbon copy of the complaint in the State court action" and finding the second complaint barred by the doctrine of res judicata).

The causes of action asserted in the 1994 and the 1997 complaints both arise out of Loving's employment with Pirelli, his membership and participation in the Plan, his termination on November 9, 1987, and his subsequent efforts to obtain the benefits he believed he was entitled to under the terms of the Plan. Thus, the facts, witnesses, and evidence underlying the causes of action in the 1994 complaint and in the 1997 complaint are identical.

Furthermore, Stull seeks to amend the 1997 complaint to add a claim for breach of fiduciary duty. However, the breach of fiduciary duty claim arises out of these same facts and circumstances, and it is a claim that could have been asserted in the 1994 complaint. Thus, because of "the 'essential similarity of the underlying events giving rise to the various legal claims,' " *Lubrizol*, 929 F.2d at 963, the court concludes that even if it granted Stull's motion to amend, the 1997 complaint would assert the same cause of action as the 1994 complaint.

Additionally, Stull's argument that § 1367(d) provides a legal basis for reviewing this court's statute of limitations determination is entirely misplaced. As noted above, § 1367 provides the basis for the federal court to exercise supplemental jurisdiction over state law claims under specific circumstances. Loving's claim for benefits does not implicate the court's jurisdiction to keep state law claims under § 1367.

Thus, for the reasons stated above, the court concludes that the 1997 complaint asserts the same cause of action as the 1994 complaint.

### 2. *Are the parties in the 1997 action the same as, or in privity with, the parties in the 1994 action?*

The second question the court must decide is whether the parties in the 1997 action are the same as, or in privity with, the parties in the 1994 action. *See id.* The 1994 complaint names as defendants the same three parties named in the 1997 complaint. Accordingly, the parties in the current action are identical to the parties in the earlier action.

### 3. *Was the prior adjudication a final judgment on the merits?*

The third question the court must decide is whether the prior adjudication constituted a final judgment on the merits. *See id.*

This court has held a determination that a cause of action is time-barred constitutes a decision on the merits. In particular, this court has stated that "[f]or the purpose of considering the applicability of the principle of res judicata, the dismissal of the action by reason of its being barred by the statute of limitations is an adjudication upon the merits." *Williamson v. Columbia Gas & Elec. Corp.*, 91 F.Supp. 874, 880 (D.Del.), aff'd, 186

F.2d 464 (3d Cir.1950), *cert. denied,* 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951). Furthermore, this court stated that "[t]he general rule is that where judgment is given for a defendant upon the ground that the action is barred by the statute of limitations, the plaintiff is precluded from thereafter maintaining an action upon the same claim in that jurisdiction." *Id. See also* FED.R.CIV.P. 41(b) (providing that "any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits"); *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 896 (2d Cir.) (stating that "dismissal for failure to comply with the statute of limitations will operate as an adjudication on the merits"), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983).

This court granted summary judgment in favor of defendants on all claims in the 1994 complaint on the ground that they were barred by the applicable three-year statute of limitations. Stull timely filed a motion for reargument which the court denied. The Third Circuit subsequently affirmed this court's decision and denied a request for a rehearing en banc. Stull then filed petition for a writ of certiorari which the Supreme Court denied. Thus, it is clear that the prior adjudication constituted a final judgment on the merits.

### 4. *Is the 1997 complaint barred by res judicata?*

The court has concluded that the 1997 cause of action is the same as the 1994 cause of action, the parties in both cases are the same, and the prior adjudication constituted a final judgment on the merits. Accordingly, the 1997 complaint is barred by the doctrine of res judicata, and the court will grant defendants' motion for summary judgment. *See* FED.R.CIV.P. 56(c) (stating that summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Additionally, as noted above, even if the court were to grant the

motion to amend the complaint, the addition of a breach of fiduciary duty claim would not overcome the bar posed by the doctrine of res judicata. Thus, the court will deny the motion to amend the complaint.

### B. *Should The Court Grant Defendants' Motion For Sanctions?*

Defendants argue that the court should sanction Stull pursuant to Rule 11 for filing the 1997 complaint after the court previously granted summary judgment in defendants' favor on a nearly identical complaint, and after defendants urged Stull to voluntarily withdraw the case because it was barred by res judicata.

Rule 11 states:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED.R.CIV.P. 11(b).

The Third Circuit has stated that the "Rule 11 test 'is now an objective one of reasonableness' and seeks to discourage pleadings 'without factual foundation, even though the paper was not filed in subjective

bad faith.' Rule 11 also seeks to ensure a pleading is not used for 'an improper purpose, such as to cause harassment, undue delay, or needless increase in litigation expense.'" *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 616 (3d Cir.1991) (citations omitted). The Third Circuit has also cautioned that Rule 11 sanctions should be "awarded in exceptional circumstances in order to 'discourage plaintiffs from bringing baseless actions or making frivolous motions.'" *Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir.1994) (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988)). *See also Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N*, 832 F.2d 31, 32 n. 1 (3d Cir.1987) (noting that "Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation").

### 1. *Does Rule 11 apply?*

Stull argues that Rule 11 is inapplicable in the present matter for two reasons. First, Stull argues that Rule 11 does not apply because he did not file the 1997 complaint in bad faith or for a frivolous reason. Second, Stull argues that Rule 11 does not apply because he originally filed the 1997 complaint in state court, and Rule 11 applies to proceedings in federal court.

The Third Circuit has specifically stated that a finding of bad faith is not a necessary prerequisite to imposing sanctions under Rule 11. *See Lony*, 935 F.2d at 616. Accordingly, whether Stull acted in bad faith or with a frivolous purpose is not determinative of whether Rule 11 sanctions are appropriate.

Furthermore, the 1993 Advisory Committee Notes specifically state that "if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court, [i]t would be viewed as 'presenting'—and hence certifying to the district court under Rule 11—those allegations." Thus, the fact that Stull initially filed the 1997 complaint in state court does not render Rule 11 inapplicable to the present matter.

Additionally, after defendants removed the case to this court, Stull filed a motion to amend. By signing the motion to amend and filing it with this court, Stull represented to the court that he complied with Rule 11(b). Furthermore, the 1993 Advisory Committee Notes to Rule 11 specifically state that "a litigant's obligations with respect to the contents of [papers filed with the court] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." At oral argument Stull continued to argue that the 1997 complaint had merit.

Accordingly, for the reasons stated above, the court concludes that Rule 11 is applicable to this case. The court must now determine whether Rule 11 sanctions are warranted.

### 2. *Did Stull act in an objectively reasonable manner?*

Before imposing sanctions pursuant to Rule 11 the court must decide whether Stull acted in an objectively reasonable manner when he filed and pursued the 1997 complaint. *See Lony*, 935 F.2d at 616 (stating that the "Rule 11 test 'is now an objective one of reasonableness'").

Rule 11 "imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing. An inquiry is considered reasonable under the circumstances if it provides the party with 'an "objective knowledge or belief at the time of the filing of a challenged paper" that the claim was well-grounded in law and fact.'" *Bensalem*, 38 F.3d at 1314 (citations omitted).

The parties named, and the cause of action asserted, in the 1997 complaint are indisputably the same as in the 1994 complaint. An hour or two of research would have led Stull to conclude that a decision dismissing a case on the ground of statute of limitations is a decision on the merits. Thus, a cursory review of the doctrine of res judicata would have informed Stull that the claims asserted

in the 1997 complaint could not be relitigated.

Additionally, the court has struggled to understand Stull's § 1367 argument. It is incomprehensible. Basic knowledge of civil procedure, the doctrine of supplemental jurisdiction, and the plain words of the statute should have informed Stull that § 1367 was inapplicable to this matter.

The court notes that this is not the first time that Stull has demonstrated that he fails to understand certain basic concepts fundamental to the legal system. On March 24, 1998, this court issued an opinion in *Bader*, 95–463–RRM, in which it found that the circumstances warranted the imposition of Rule 11 sanctions on Stull. Stull had submitted briefs on renewed motions for summary judgment including several previously asserted arguments which the court had conclusively ruled on. Although the court chose not to impose sanctions, it cautioned Stull to "act more prudently in choosing which battles to continue to pursue in the future," and it warned Stull that "any future 'misuse of the judicial process' will result in appropriate sanctions."

If Stull had conducted "a reasonable inquiry into the applicable law and facts," he would have concluded that the 1997 complaint was not "well-grounded in law and fact." *Id.* The claims asserted in that complaint clearly were not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." FED.R.CIV.P. 11(b)(2). Accordingly, the court finds that Stull did not act in an objectively reasonable manner in choosing to pursue the 1997 complaint.

### 3. *Has Stull had notice and an opportunity to be heard?*

■ Before imposing sanctions under Rule 11, the court must also determine whether Stull had notice and an opportunity to be heard.

The Third Circuit recently stated that " 'the fundamental requirements of due process—notice and an opportunity to respond—must be afforded before any sanction is imposed.' " *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir.1997) (quoting *Martin v. Brown*, 63 F.3d 1252, 1261 (3d Cir.1995)). *See also Rogal v. American Broad. Cos.*, 74 F.3d 40, 44 (3d Cir.1996) (stating that "[t]he imposition of monetary sanctions by a court implicates fundamental notions of due process"). The Third Circuit also stated that the "party against whom sanctions are being considered is entitled to notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." *Tutu Wells*, 120 F.3d at 379.

#### a. *Has Stull had notice?*

Defendants warned Stull on several occasions that they would seek Rule 11 sanctions if he did not voluntarily withdraw the 1997 complaint. Defendants subsequently served Stull with the motion for sanctions and waited the requisite twenty-one days before filing it with the court. *See* FED.R.CIV.P. 11(c)(1)(A). In the motion defendants state the reasons why they believe sanctions are appropriate, and that they seek monetary sanctions. At the March 25, 1998 oral argument defendants gave Stull copies of affidavits documenting the amount of sanctions sought. After the hearing, defendants reiterated in a letter their belief that attorney's fees and costs would be an appropriate sanction against Stull. Additionally, at the oral argument the court explained to Stull why it believed sanctions were appropriate, and that it was prepared to impose sanctions against him.

Accordingly, the court concludes that Stull had sufficient notice from defendants and from the court of "the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." *Tutu Wells*, 120 F.3d at 379.

#### b. *Has Stull had an opportunity to be heard?*

Stull filed the 1997 complaint on June 26, 1997. In a July 15, 1997 letter, and an August 12, 1997 telephone call defendants actively encouraged Stull to withdraw the case. Two months later, on October 17, 1997, defendants moved for Rule 11 sanctions against Stull. Stull timely filed an answering brief. On March 25, 1998, the court heard

oral argument on defendants' motion for sanctions.

At the oral argument, the court asked Stull to clarify the reasons why he felt the 1997 complaint has merit. The court listened to Stull's asserted theories and specifically questioned Stull about his understanding of § 1367(d). The court informed Stull that it was prepared to impose Rule 11 sanctions as it did not see any basis for filing the 1997 complaint, and it did not understand the theories advanced by Stull. However, before imposing sanctions the court gave Stull an additional opportunity to explain his theories by having another attorney review the matter. On April 22, 1998, Neuberger submitted a letter to the court on Stull's behalf.

Accordingly, for the reasons stated above the court concludes that Stull had an opportunity to be heard on the reasons why the court should not sanction him before oral argument, at oral argument, and after oral argument.

The court has concluded that it will impose Rule 11 sanctions against Stull. However, before the court determines what sanctions it will impose under Rule 11, the court will address defendants' motion for attorney's fees and costs pursuant to § 502(g). *See* FED.R.CIV.P. 11 advisory committee's note (1993) (stating that "[i]n cases brought under statutes providing for fees to be awarded to prevailing parties, the court should not employ cost-shifting under this rule in a manner that would be inconsistent with the standards that govern the statutory award of fees").

C. *Should The Court Award Attorney's Fees And Costs Pursuant to § 502(g)?*

Defendants filed a motion for attorney's fees and costs pursuant to ERISA § 502(g). ERISA § 502(g)(1) provides that "[i]n any action under this chapter ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

■ An award of attorney's fees and costs under § 502(g) can be assessed against either a party or an attorney. *See e.g., Monkelis v. Mobay Chem.,* 827 F.2d 935, 937 (3d Cir.1987) (affirming a district court's award of attorney's fees against plaintiff). One court assessed fees pursuant to § 502(g) against both the attorney and the plaintiff. *See Baker v. Greater Kansas City Laborers Welfare Fund,* 716 F.Supp. 1229, 1231 (W.D.Mo.1989). The court assessed the majority of the fees against the attorney, and stated that

[c]ounsel's responsibility is clear. He had the responsibility to assess the facts in light of the law. Counsel presumably has been trained to make this legal analysis and to reach an emotional, rational conclusion about the merits of plaintiff's claims. After doing so, if there were no reasonable basis for believing that plaintiff was unlawfully denied employee welfare benefits, counsel should have used his best efforts to convince plaintiff to conclude the case.

*Id. See also Cowden v. Montgomery County Soc. for Cancer Control,* 653 F.Supp. 1072, 1078 (S.D.Ohio 1986) (assessing attorney's fees against counsel pursuant to § 502(g)). Accordingly, the court will evaluate whether to award attorney's fees and costs against either Loving or Stull, or both.

An award of attorney's fees and costs under § 502(g) can also be assessed against either plaintiff or defendant. The court recognizes that it is unusual to award attorney's fees and costs to a prevailing defendant. For example, the Fifth Circuit has stated that it would not award attorney's fees and costs pursuant to § 502(g) to a prevailing defendant because the claim was not "totally without merit" and because plaintiff acted in good faith. *See Hogan v. Kraft Foods,* 969 F.2d 142, 146 (5th Cir.1992). The Eleventh Circuit has made a similar statement, denying a § 502(g) request for attorney's fees and costs to a prevailing defendant because the case presented close questions of law and because plaintiff did not act in bad faith. *See First Nat'l Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.,* 960 F.2d 1546, 1554 (11th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). However, the Third Circuit has affirmed an award of attorney's fees pursuant to § 502(g) to prevailing defendants in a case in which the ERISA claim was "clearly frivolous on the merits." *Monkelis,* 827 F.2d at 937.

■ The Third Circuit has set forth five factors a district court should consider when deciding whether to award attorney's fees and costs pursuant to § 502(g). The court must consider

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorney's fees;

(3) the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

*McPherson v. Employees' Pension Plan of American Re–Insurance Company, Inc.,* 33 F.3d 253, 254 (3d Cir.1994) (quoting *Ursic v. Bethlehem Mines,* 719 F.2d 670, 673 (3d Cir. 1983)). A district court is required to set forth with specificity its reasoning and conclusion for each of the five factors. *See id.*

■ The first factor a court must consider is the "offending parties' culpability or bad faith." *Id.* This factor does not require an "ulterior motive or sinister purpose" as a "losing party may be culpable [without] having acted with an ulterior motive." *Id.* at 256. Culpability "is commonly understood to mean conduct that is 'blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault.... Such conduct normally involves something more than simple negligence.... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong.'" *Id.* at 256–57 (quoting BLACK'S LAW DICTIONARY (6th ed.1990)).

At the March 25, 1998 oral argument, the court specifically addressed Loving and inquired into the circumstances leading up to the filing of the 1997 complaint. Loving indicated that he relied on Stull's advice when he chose to file the 1997 complaint. The court has no reason to doubt this. Accordingly, the court finds no basis for believing that Loving acted in bad faith or culpably in pursuing the 1997 complaint. This factor does not weigh in favor of an award of attorney's fees and costs against Loving.

At the March 25, 1998 oral argument the court specifically stated that it did not believe Stull acted in bad faith. However, with minimal research, Stull would have concluded that the 1997 complaint was barred by the doctrine of res judicata and that § 1367(d) was inapplicable to this matter. Thus, the court concludes that although Stull did not have an "ulterior motive or sinister purpose," his conduct is " 'blameable,' " and " 'reprehensible.' " Accordingly, the first factor weighs in favor of an award of attorney's fees against Stull. *See Monkelis,* 827 F.2d at 936 (concluding that where the "evidence demonstrates that [plaintiff's] ERISA claim was time barred and substantively without merit," the first factor weighs in favor of awarding attorney's fees and costs).

The second factor a court must consider is "the ability of the offending parties to satisfy an award of attorney's fees." *McPherson,* 33 F.3d at 254. The Third Circuit has stated that it could not conclude that plaintiff "lacks the ability to satisfy the fee award since [plaintiff] has never argued that he is unable to satisfy" the claim for attorney's fees and costs. *Monkelis,* 827 F.2d at 937. Neither Loving nor Stull have argued that they are unable to satisfy an award of attorney's fees and costs. However, defendants have not presented any evidence demonstrating that either Loving or Stull could satisfy such an award. Accordingly, the court concludes that this factor neither weighs in favor of, nor against, an award of attorney's fees and costs.

The third factor a court must consider is "the deterrent effect of an award of attorneys' fees against the offending parties." *McPherson,* 33 F.3d at 254. The court has no reason to believe that Loving will bring additional lawsuits in connection with the administration of his retirement benefits. Consequently, it does not appear that an award of attorney's fees against Loving will "serve the objectives of ERISA" and deter future conduct of this kind by Loving. *Id.* at 258.

However, the Third Circuit has explained that "the deterrent effect [of an award of attorney's fees and costs] will be beneficial upon those who contemplate speculative and

duplicative litigation on thinly based grounds." *Monkelis,* 827 F.2d at 937. The 1997 complaint clearly constitutes "duplicative litigation on thinly based grounds." The court believes that an award of attorney's fees against Stull will sufficiently impress and impact Stull, and deter him from filing meritless complaints in the future. Accordingly, the court concludes that this factor weighs in favor of an award of attorney's fees against Stull.

The fourth factor a court must consider is "the benefit conferred on members of the pension plan as a whole." *McPherson,* 33 F.3d at 254. This factor "requires consideration of the benefit, if any, that is conferred on others by the court's judgment." *Id.* This factor is irrelevant to this matter as it is directed to the benefit achieved in litigation. Accordingly, it neither weighs in favor of, nor against, an award of attorney's fees and costs.

The fifth factor a court must consider is "the relative merits of the parties' position." *Id.* The court has already concluded that the 1997 complaint is meritless. As noted above, the court does not find that Loving acted in bad faith or culpably in pursuing meritless claims. Additionally, as noted above, while the court does not find that Stull acted in bad faith, it does find Stull culpable. *See also Baker v. Greater Kansas City Laborers Welfare Fund,* 716 F.Supp. 1229, 1231 (W.D.Mo. 1989) (stating that "counsel, by training and experience, [is] in the best position to understand the problems presented by a frivolous case and to advise plaintiff to not pursue the case or to withdraw"). Therefore, the court concludes that this factor weighs in favor of granting defendants' motion for attorney's fees against Stull, and not against Loving.

After considering the five factors governing whether the court should award attorney's fees to defendants, the court concludes that it will grant defendants' motion for attorney's fees and costs pursuant to § 502(g). For the reasons stated above, the court will not impose the attorney's fees and costs against Loving, and it will impose them against Stull.

### D. What Sanctions And Amount Of Attorney's Fees And Costs Should The Court Award?

The court has concluded that it will impose Rule 11 sanctions against Stull, and that it will award defendants attorney's fees and costs pursuant to § 502(g). The court must now determine what sanctions and amount of attorney's fees and costs that it will impose. Defendants have asked the court to award them the approximately $37,000 they have spent defending the 1997 complaint.

 In considering the type of sanctions and amount of attorney's fees to award, the court should look to the purposes and policies behind Rule 11 and § 502(g).

#### 1. What is the purpose of Rule 11?

Rule 11(c) states the following:

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

 (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

 (B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or show attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Fed.R.Civ.P. 11(c). The 1993 Advisory Committee Notes to Rule 11 state that "[t]he

court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct." Accordingly, the clearly stated purpose of Rule 11 sanctions is to deter future conduct of the type that resulted in the imposition of sanctions.

2. *What is the purpose of § 502(g)?*

 Section 502(g) is the provision under ERISA that provides for fee-shifting at the court's discretion. *See Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 719 n. 5 (3d Cir.1989) (referring to § 502(g) as a "fee-shifting provision"). The Third Circuit has stated that "the statutory purpose of ERISA [is] to protect pension benefits." *Ellison v. Shenango Inc. Pension Bd.,* 956 F.2d 1268, 1277 (3d Cir.1992). *See also Henley v. Lokey Oldsmobile–Countryside, Inc.,* 817 F.Supp. 942, 944 (M.D.Fla.1993) (stating that "ERISA's essential remedial purpose is to protect beneficiaries of private pension plans by securing their rights under the employee benefit plans"). Accordingly, the policy behind awarding attorney's fees and costs pursuant to § 502(g) is to uphold the general purpose of ERISA by protecting pension benefits. Additionally, the Third Circuit has stated that the five factors a district court must consider when evaluating whether to award attorney's fees and sanctions under § 502(g) "adequately address ERISA's policy concerns of remediation and deterrence." *Ellison,* 956 F.2d at 1274. Accordingly, an award of attorney's fees pursuant to § 502(g) is also intended to deter conduct that does not fulfill the purpose of ERISA.

3. *What sanction and amount of fees should the court impose that will fulfill the purposes of both Rule 11 and § 502(g)?*

 Rule 11 sanctions can be imposed in many different forms. Rule 11 specifically states that a sanction can be either monetary or nonmonetary in nature. *See* FED.R.CIV.P. 11(c)(2). The 1993 Advisory Committee Notes list some of the options a court can resort to when imposing sanctions. These options include "striking the offending paper;

issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; [and] referring the matter to disciplinary authorities." Rule 11(c)(1)(A) also states that "[i]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." *See Tutu Wells,* 120 F.3d at 388 (noting that "[t]he time, effort, and resources expended in bringing sanctionable conduct to light would have been unnecessary had the sanctionable conduct never occurred," and stating that these "costs are as much a harm to a party in the litigation as is the delay in the litigation or the substantive prejudice caused by the conduct").

The court does not believe that admonishing Stull or requiring him to attend educational programs will sufficiently impress upon him the egregiousness of his conduct. Similarly, the court does not believe that requiring Stull to pay a fine to the court will sufficiently impress upon him the extent of harm he caused defendants. Thus, the court believes that requiring Stull to reimburse defendants for the harm caused is the only sanction that will deter him from comparable future conduct. Accordingly, the Rule 11 sanctions that the court will impose on Stull will be reasonable attorneys' fees and costs. The court will rely on § 502(g) to determine the amount of attorney's fees and costs it will award defendants.

When determining the amount of reasonable attorney's fees to award under § 502(g), the Third Circuit has stated that a "twin inquiry into reasonableness" is required. *Ursic v. Bethlehem Mines,* 719 F.2d 670, 676 (3d Cir.1983). The court must look into both a "reasonable hourly rate and a determination of whether it was reasonable to expend the number of hours in a particular case." *Id.*

The affidavits and billing records produced by defendants' counsel provide a detailed account of the attorneys that worked on this case, their billing rates, the nature of the work, and the amount of time spent on that work. The attorneys that worked on this

matter spent numerous hours attempting to persuade Stull to voluntarily withdraw the complaint, responding to the complaint, researching res judicata, Rule 11, and § 502(g), and preparing motions and briefs on those topics. For example, attorneys at Proskauer, Rose spent nearly fifty hours, and incurred approximately $10,000 in attorney's fees, researching res judicata and preparing defendants' motion for summary judgment. They also spent nearly twenty hours, and incurred approximately $7,000 in attorney's fees, researching Rule 11 and preparing defendants' motion for sanctions.

Stull's conduct has imposed a significant financial burden on defendants by forcing defendants to respond to a meritless lawsuit. Stull should have recognized that the 1997 complaint was meritless. Stull's failure to recognize this prompted defendants to spend time preparing an answer to the complaint, and researching and preparing motions for summary judgment, for attorney's fees and costs, and for sanctions. Nonetheless, the court finds that $37,000 is an extraordinarily large sum of money to fine Stull, and that a lesser fine will equally serve the purposes of both Rule 11 and § 502(g).

The 1993 Advisory Committee Notes state that "partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources." Additionally, the Third Circuit has cautioned that an award of attorney's fees and costs under § 502(g) should not "amount[ ] to an excessively punitive sanction." *Ursic*, 719 F.2d at 677. *See also id.* at 673 & 677 (stating that where "the award [of attorney's fees and costs] is statutory, the assessment of a counsel fee is to some extent a penalty for violating the law," but also cautioning that a fee award is not "the appropriate vehicle for punitive sanctions").

However, in *Bell v. United Princeton Properties, Inc.*, 884 F.2d at 719, the Third Circuit held that a district court "may not sua sponte reduce a § 502(g) request for attorneys' fees." The Third Circuit stated that "sua sponte reduction of a fee request deprives the fee applicant of her entitlement [to] 'offer evidence in support of the reasonableness of her request.'" *Id.* (quoting *Cun-*

*ningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985)). Additionally, "because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award of its own initiative." *Id.* Furthermore, the *Bell* court stated that a "district court retains a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party." *Id.* at 721.

The reasonableness of the amount of attorney's fees and costs requested by defendants has not been an issue in this litigation. Neither party has discussed the Third Circuit opinion in *Bell*. Furthermore, despite the opportunity to discuss the reasonableness of the fees requested, neither party raised it at the March 25, 1998 oral argument. Additionally, following the oral argument, Stull did not request an evidentiary hearing on the amount of fees requested.

The court concludes that assessing a $10,000 sanction and award of attorney's fees and costs against Stull will serve the purposes of Rule 11 and § 502(g). The court recognizes that this sanction and award will not compensate defendants for all of the harm caused by Stull's conduct. However, $10,000 is a substantial sum to be paid, in particular by a sole practitioner like Stull. Furthermore, the court expects that this sanction and award are sufficiently severe to uphold the purposes of Rule 11 and § 502(g) by punishing Stull and deterring him from pursuing future frivolous battles. To the extent that either party seeks review of the award of attorney's fees and costs pursuant to § 502(g), either party can file a motion for reargument within ten days of the entry of an order granting defendants' motion for attorney's fees and costs.

### III. *CONCLUSION*

For the reasons stated above, the court will grant defendants' motion for summary judgment and deny plaintiff's motion to amend. The court will also grant defendants' motion for sanctions pursuant to Rule 11 and defendants' motion for attorney's fees and costs pursuant to § 502(g). The court will assess a $10,000 sanction and award of

attorney's fees and costs against Stull, to be paid to the party or parties designated by defendants.

The court will enter an order in accordance with this opinion.